# Richmond.

## BURWELL AND ALS. V. BURWELL'S GUARDIAN, &C.

### January 31, 1884.

## Absent, *Lewis*, P., and *Richardson*, J.

1. GUARDIANS—*Conversion of assets—Reacquisition.*—Where guardian appropriates his ward's assets to his own private purposes, it is a breach of trust for which he is liable; which liability is not removed by his subsequent reacquisition of those assets.

2. NON-RESIDENTS—*Publication—Appearance—Notice.*—Under Code 1873, chapter 166, section 15, where order of publication has been duly executed against non-resident, or unknown defendants, no other notice is required to be given them in any proceeding in court, or before a commissioner, or for the purpose of taking depositions, unless specially ordered by the court, *if those defendants shall not appear* within one month after completion of the publication. But if they so appear, then they are entitled to notice in all the subsequent proceedings in the suit.

3. IDEM—*Idem—Case at bar.*—In 1873, G qualified as guardian of T and four other infants. In September, 1875, G filed his bill for a settlement of his accounts against his wards, all of whom were non-residents, and an order of publication was duly executed, and they duly appeared by guardian *ad litem.* Account showed in guardian's hands, in money, $8,261.16, received February 1, 1874, and also one bond for $1,000 G loaned J, February 4, 1874, on trust deed. In May, 1876, court confirmed report, and ordered G to pay T, who had obtained his majority, one-fifth of the money—*i. e.,* $1,632.23—and to collect the bond. Four days after decree, G assigned this bond to T, in part settlement and exchange for the $1,632.23 he had been ordered to pay T. The bond was worthless, the security being worthless when G loaned J the money. In September, 1877, G took back the bond from T and claimed it to be part of his ward's assets. Before lending the $1,000, G employed attorneys of good standing to investigate the security, and they reported it good and free from encumbrances; for which service they were paid $100, deducted from the $8,261.16. But encumbrances existed and

exhausted the security, and G, who was also an attorney, had been so connected with their creation as to give him notice thereof. In July, 1878, a decree was entered holding G *harmless* for the loss of the $1,000. In April, 1880, the wards filed a bill to set aside that decree because it was based on a report founded on depositions taken when they were unnotified and unrepresented. G answered. Depositions were taken proving the bill. On hearing the consolidated cases, the court decreed that no cause had been shown for reopening the decree complained of, and dismissed the bill with costs. On appeal—

HELD:

1. The plaintiffs were entitled to notice, after their appearance in the suit, of all the subseqent proceedings, and the decree founded on the depositions taken without notice to them, and when they were unrepresented, should have been reopened.

2. Under the circumstances, G did not act in loaning the $1,000 to J with the discretion and judgment which his duty required.

3. The assignment of the bond to T was an appropriation of his ward's assets to G's own purposes, and such a conversion thereof as made G at once liable.

4. Such liability was not affected by the subsequent reacquisition of the bond.

Appeal of Thomas G. Burwell, Sarah E. Burwell, H. H. Burwell, trustee, Fannie S. Burwell, George L. Burwell and Henry J. Burwell, from decrees of circuit court of Mecklenburg county, rendered November 29th, 1880, and May 26th, 1881, respectively, in the consolidated suits of Thomas G. Burwell's Guardian, &c. v. Thomas G. Burwell's Trustee, &c., and Thos. G. Burwell, &c. v. Thomas F. Goode, Guardian, &c. Opinion states the facts and proceedings.

*Geo. B. Finch* and *Carrington & Fitzhugh,* for the appellants.

*Wm. J. Robertson* and *W. W. Gordon,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

At the October term, 1873, of the circuit court of Mecklenburg county, Thomas F. Goode qualified as the guardian

of Thomas G., Sarah E., Fannie S., George L., and Henry J. Burwell (the orphan children of George W. Burwell, deceased), all of whom lived in the State of North Carolina, with their uncle, H. H. Burwell, who was their guardian in North Carolina. The object of the qualification of Thomas F. Goode, in Virginia, as guardian of the orphans aforesaid, was to take charge of and manage a sum of money arising from a life-policy of the said George W. Burwell, deceased, amounting to some $9,500, which was received by the said Goode, as guardian, February 1, 1874.

At the September rules, 1875, Goode filed a bill asking for a settlement of his guardianship accounts, and for an inquiry to be made as to the competency of Thomas G. Burwell to manage his own affairs—he having recently attained to his majority, and his father having appointed, by his will, his brother, H. H. Burwell, trustee of Thomas G. Burwell, because he did not regard him as capable of managing his own affairs.

At the November term, 1875, of the said court, a decree was entered directing the guardian, Goode, to settle his account, and an inquiry to be made as to the competency of Thomas G. Burwell. At the May term, 1876, Commissioner Baskerville reported that Thomas G. Burwell was competent to manage his own affairs, and that there was in the hands of the guardian, Goode, in money, $8,261.16, received by him February 1, 1874; and also one bond for $1,000, loaned to T. L. Jones, February 4th, 1874, secured by a deed of trust on a tract of land belonging to Jones, as the only security, he owning no other property. May 26th, 1876, a decree was entered confirming this report, and ordering the guardian, Goode, to pay to T. G. Burwell $1,632.23, being one-fifth of the $8,261.16 in hand, and also ordering him to collect the $1,000 bond loaned to Jones, which bond was payable to Thomas F. Goode, guardian of Thomas G., Sarah E., Fannie S., George L., and Henry J. Burwell.

On the 1st day of June, 1876, four days after the aforesaid decree, the guardian, Goode, assigned this $1,000 Jones bond to his former ward, T. G. Burwell, in part "settlement and exchange" for the $1,632.23 which he had been ordered by the said decree to pay to T. G. Burwell, and which Goode says, in his deposition, was for money which he had collected for T. G. Burwell on the 1st day of February, 1874, and had appropriated to his own private purposes.

T. L. Jones obtained his discharge in bankruptcy December 12th, 1868, having been adjudicated a bankrupt in September, 1867, and Thomas F. Goode was one of his attorneys who filed his petition in bankruptcy. At the January rules, 1868, after T. L. Jones had been adjudicated a bankrupt, Thomas F. Goode, as counsel for William, Thomas, and John W. Jones, filed a bill against T. L. Jones, who had been their guardian, and on the 15th September, 1868, recovered a decree against T. L. Jones in favor of William, Thomas and John W. Jones, respectively, for $434.74, $801.64, and $825.57, with interest on these sums from June 1st, 1868, till paid; which said decrees were entered on the lien docket on the 28th September, 1868.

At the suit of William, Thomas and John W. Jones the court entered a decree June 30th, 1877, deciding that these decrees aforesaid were prior encumbrances upon the tract of land of T. L. Jones, deeded to Thomas F. Goode, to secure the $1,000 bond, and the land was sold to satisfy the said liens, and brought the sum of $757.39, of which amount the sum of $29.10 was paid on the $1,000 loaned to T. L. Jones, being the value of the contingent right of dower of the wife of T. L. Jones, she having united with him in the deed of trust to secure the $1,000; and this sum is all that has been ever paid on the said $1,000 Jones bond. On the 16th of July, 1878, a decree was entered in the said suit of T. F. Goode, Guardian, &c. v. T. G. Burwell's Trus-

tee, &c., holding Goode harmless for the loss of the $1,000 loaned to Jones.

At the April rules, 1880, the appellants filed their bill to impeach and set aside this last mentioned decree of July 16th, 1878, for the reason that it had been rendered upon a report made by the commissioner based upon the depositions of T. F. Goode, W. E. Homes and W. T. Atkins, which report had been made and depositions taken without notice to the appellants, and without their being represented in any way. The defendant (Goode) demurred generally to this bill, which demurrer was overruled, and then he answered. Depositions were taken, and on the 29th November, 1880, a decree was entered consolidating the two causes and expressing the opinion of the court that the "plaintiffs had failed to sustain the allegations of their bill, and to show any cause for reopening the decrees complained of." But the defendant Goode, guardian as aforesaid, being willing that the matter complained of in said bill should be inquired into, the decrees complained of were set aside and the account ordered to be retaken, and the court reserved its opinion as to the question of costs. On the 26th of May, 1881, the bill was dismissed with costs. September 4th, 1877, the guardian (Goode) received back from T. G. Burwell the $1,000 Jones bond, which he had assigned to him June 1st, 1876, and now claims it to be a part of the trust fund in his hands belonging to his wards, the five children of George W. Burwell, deceased.

We think that the circuit court erred in its decree of November 29, 1880, in deciding that the plaintiffs had failed to prove the allegations in their bill, and to show any cause for reopening the decrees complained of; and erred in dismissing plaintiff's bill with costs by its decree of May 26, 1881. But in as much as the guardian (Goode) consented to the reopening of the case, the opinion of the circuit court to the contrary notwithstanding, and the decrees com-

plained of were set aside and the account ordered to be retaken, the appellants were not injured by the said decree of November 29, 1880, except as to the matter of costs. But the circuit court erred in dismissing the bill with costs by its decree of May 26, 1881, and in denying to the appellants the relief which they prayed for in their bill.

The allegation in the bill is: that the depositions of Goode, the guardian, W. E. Homes, and W. T. Atkins were taken, and the guardian's account itself settled and based upon these depositions, without notice to his wards (the appellants here), and that they were not represented by counsel or otherwise. The defendant (T. G. Burwell) was of age when the first of these bills was filed, and was not represented, nor appeared in any way in that bill until after the decree of May term, 1876, was rendered. He was a non-resident, and never having been a party to that suit, had the statutory right to reopen that decree by petition within five years from its rendition; he did file his petition, but no notice was ever taken of it in any way, except to allow him to file it. The other four non-resident infant defendants in the suit of *Goode, Guardian, &c.* v. *Burwell's Trustee, &c.,* were entitled to notice before the taking of the depositions and settling the account of Goode, guardian, by which he was relieved of the responsibility for the loss of the $1,000 of his trust fund loaned to T. L. Jones, and confirmed by the decree of July 16, 1878. The Code of Virginia, 1873, chapter 166, section 15, provides that no notice shall be given to non-residents, when order of publication has been made, unless they have appeared in said suit. In this case these non resident infant defendants did appear by guardian *ad litem*, were represented by counsel, and filed their answer at the first term of the court after the filing of the bill. They were then entitled to notice in all the subsequent proceedings in said suit. They allege in the bill that they received no notice of the taking of the

depositions and the settling of the account of their guardian, Goode. The answer of Goode, the guardian, does not deny the allegation of the want of notice, but calls for proof. The depositions say upon their face that they were taken "by consent of parties by counsel." The commissioner says, in his deposition, the only counsel he did or could have referred to by this statement was W. E. Homes. Homes denies that he was counsel; Commissioner Baskerville, who took the depositions and settled the account, says that Homes did not act as counsel, and the guardian (Goode) says that Homes was not counsel for any of the parties. These were the only witnesses who testified on this point, and they all agree that Homes was not counsel.

The non-resident infant defendants did not receive any actual notice of the taking of the depositions and the settlement of the guardian's account. The commissioner (Baskerville) says that he served no notice on them, and did not order any to be served on them. He was the only person whose duty it was to issue and order the service of notice on them. He says that he did not summon them because he believed that W. E. Homes was counsel for them, and consented to the taking of the depositions *without notice.* The only notice pretended to have been given was to H. H. Burwell, the North Carolina guardian, who was only a nominal party to the proceedings, and who denies that he agreed that the matter might be inquired into without counsel. It was the duty of T. F. Goode, who was guardian in Virginia, to see that the interest of his wards was properly protected; but it appears from the record that these depositions were taken and this guardian account settled without notice to the non-resident infant wards and without counsel, in a controversy with their guardian in Virginia. Not a witness was summoned, and not one word of testimony taken for the infant defendants; and T. F. Goode says, in his deposition, that the names of

the only witnesses examined were suggested by himself to the commissioner "for the purpose of showing that I had exercised diligence in the premises." This guardian, T. F. Goode (who had been of counsel for T. L. Jones in bankruptcy, and against whom he had obtained, after he had been adjudicated a bankrupt, judgments, as a former fiduciary, amounting, with simple interest, to upwards of $2,700, and which were duly entered on the lien docket on 28th September, 1868), loaned $1,000 of the money of his infant wards to T. L. Jones February 4th, 1874, on the sole security of a tract of land which sold for only $754.39, and which was encumbered by the prior liens of these docketed judgments. And this, he says, he did on the advice of Wm. E. Homes, whom he employed to investigate the title, and who reported to him that the title was good and the land clear of all encumbrance ; and also on the suggestion of W. T. Atkins, who was the counsel for T. L. Jones seeking to obtain the loan.

Whatever may be the significance of this transaction, it certainly does not import either prudence or providence in this guardian to loan $1,000 of his infant wards' money, on the sole security of a tract of land which was already encumbered by judgment liens, duly docketed, and which had been obtained by his agency as counsel, to more than three times its value. We think that the guardian, T. F. Goode, did not act, in loaning this $1,000 to T. L. Jones, under the circumstances above stated, with the discretion and judgment which his duty required; and the circuit court erred in decreeing to relieve him from responsibility for the loss of the money loaned. See Lomax on Ex'ors and Adm'rs, pp. 482–3, 488–9, top page ; 2 Spence's Equity, pp. 918–919, top page, and *Cogbill* v. *Boyd, Trustee, et als.*, 77 Va. 450.

But this guardian, T. F. Goode, should be held responsible for the loss of the Jones bond, because he, on the 1st June,

1876, converted it to his own use and appropriated it to pay his own individual debt, by assigning it to T. G. Burwell, in part payment of the individual judgment obtained by Burwell against him, as his former guardian, for $1,632.23. The report of the commissioner, filed May, 1876, shows in the hands of the guardian $8,261.16, and the bond of T. L. Jones for $1,000, as the property of his five wards. Thomas G. Burwell having attained to his majority, the court, by its decree of May 26th, 1876, directed the guardian to pay to the said T. G. Burwell one-fifth of the $8,261.16—viz: $1,632.23—and to proceed to collect the Jones $1,000 bond. The decree was a personal decree against the guardian, T. F. Goode, for money belonging to his trust, which he had collected more than two years before, and had appropriated to his own individual uses. This appropriation and transfer of this Jones bond by the guardian Goode was an absolute conversion, both at law and in equity, and the effect of which was to make him immediately responsible to his wards for the amount thereof. *Warwick* v. *McMurdo,* 5 Rand. 90; Lomax Ex'ors, 476, top page, and cases there cited; *Miller* v. *Jeffress,* 4 Gratt. 477–8, 481. This conversion to his own use made the Jones bond the property of Goode, and irrevocably so, in the option of his *cestui que trusts. Hunter* v. *Lawrence,* 11 Gratt. 111; *May* v. *Le Clair,* 11 Wall. p. 236; *Oliver* v. *Piatt,* 3 Howard; *Cook* v. *Tullis,* 23 Wall. p. 341; *Tabb's Curator* v. *Cabell,* 22 Gratt. 173; *Asberry's Adm'r* v. *Asberry's Adm'r and. als.,* 33 Gratt. 469. It was a breach of trust, in the first place, for this guardian to appropriate the money collected for his ward to his own purposes; it was a breach of trust, in the next place, to use the Jones bond, which was payable on its face to his five wards, in payment of a personal decree against himself for moneys of his trust which he had collected and used for over two years; it was a greater wrong, after he had used the Jones bond to pay his private debt, when he believed the bond to be good, to take the bond back, after

fifteen months, when he knew it to be worthless, and attempt to saddle its loss upon his wards.

The decrees of the circuit court of Mecklenburg, complained of, are erroneous, and must be reversed and annulled.

LACY, J., concurred in the result, but not in all the views expressed in the opinion.

The decree was as follows:

This day came again the parties, by their counsel, and the court, having maturely considered the transcript of the record of the decrees aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said decrees are erroneous, in holding that the appellee, Thomas F. Goode, was not personally liable by reason of the loan or investment of the trust funds in his hands to the amount of one thousand dollars to Thomas L. Jones.

It is, therefore, decreed and ordered that the said decrees be reversed and annulled, and that the appellee, Thomas F. Goode, pay to the appellants their costs by them expended in the prosecution of their said appeal and *supersedeas* here. And this court, proceeding to render such decree as the said circuit court ought to have rendered, it is further decreed and ordered that the said defendant, Thomas F. Goode, pay to the said plaintiffs (the appellants here) the said sum of one thousand dollars, with six per centum per annum interest thereon from the 1st day of February, 1874, the time at which said investment was made, and also their costs by them about their suit in the said circuit court expended. Which is ordered to be certified to the said circuit court of the county of Mecklenburg.

DECREES REVERSED.