# Wytheville.

## JOHNSON AND OTHERS V. MERRITT AND OTHERS.

### June 12, 1919.

1. FINAL JUDGMENTS AND DECREES—*Decree Directing Deed—Report of Commissioner.*—Where a decree disposes of the entire subject matter of the litigation and directs a commissioner in the cause to make a deed of the property in controversy and report his proceedings to the court, where there is nothing for the commissioner to report except that he has made the deed in accordance with the decree, the practice in the different circuits of this State is not uniform. In some of them, where a commissioner is directed to make a deed, he is required to report to the court when he has executed the decree by making the deed; in others, no such report is required, but whether required or not, it in no way affects the finality of the decree. The decree is, in all other respects, final and the fact that the commissioner is required to report when he has made the deed does not render it any the less final.

2. JUDICIAL SALES—*Sale to Trustee of Wife of Judgment Debtor in Suits to Subject a Tract of Land to Judgment Liens.*—In suits by judgment creditors to subject the land of a judgment debtor to their judgments, among the liens reported was one in favor of the trustee of the wife of the judgment debtor. This trustee offered to purchase the land at $4.00 per acre. His offer was accepted by a decree stating, amongst other things, that it "doth make the sale absolute and binding." There can be no doubt that this constituted a judicial sale, and upon the entry of that decree, the trustee for the wife became the equitable owner of the tract of land, and trustee of the purchase money for the heirs of the vendor, and the vendor became the equitable owner of the purchase money and a trustee of the legal title for the benefit of the purchaser, and specific performance could have been enforced by either against the other upon default in compliance with the terms of sale, and this could have been done in the suits in which the decree was entered.

3. VENDOR AND PURCHASER—*Executory Contract for Sale of Land—Conversion and Reconversion.*—From an executory contract for the sale of land, even while yet executory, the vendee acquires a "real" right, a right of property in the land, while

though lacking a legal title, and therefore equitable only, is none the less the real beneficial ownership, subject however, to a lien of the vendor as security for the purchase price as long as that remains unpaid. This property in the land, upon the death of the vendee descends to his heirs, or passes to his devisees, and is liable to the dower of his widow. The vendor still holds the legal title, but only as trustee, and he in turn acquires an equitable ownership of the purchase money; his property, as viewed by equity, is no longer real estate in the land, but personal estate in the price, and if he dies before payment, it goes to his administrator, and not to his heirs. In short, equity regards the two contracting parties as having changed positions, and the original estate of each as having been "converted," that of the vendee from personal into real estate, and that of the vendor from real into personal property.

4. JUDICIAL SALES—*Commissioner's Deed—Estate Conveyed by— Compliance with Terms.*—In suits to subject the lands of a judgment debtor, the trustee of the judgment debtor's wife offered to buy the land and his offer was accepted by a decree. The court could have compelled the trustee to comply with the terms of sale by a rule and proceedings had thereon for a re-sale at his risk. The proceeding by rule has been likened to a suit for specific performance. After the entry of the decree, the judgment debtor held nothing but the bare legal title to the tract of land. If the trustee had complied with the terms of that decree, and the commissioner had, in pursuance thereof, conveyed the land to him, the deed from the commissioner would have conveyed all the estate, legal and equitable, of all parties to the suit to the trustee. Such a deed would have operated to convey the title of the parties as of the date of the decree, and the death of the judgment debtor after that time would have been immaterial. In the instant case, however, the commissioner and the judgment debtor died before the deed was made. As the judgment debtor was seized of the mere naked legal title, that was all that passed to his heirs, and as holders of the legal title they might have been compelled to convey it to the trustee.

5. LIMITATION OF ACTIONS — *Period — Infancy.* — Notwithstanding that section 2931, Code of 1904, makes a saving in favor of infants, it expressly provides an ultimate limitation, notwithstanding infancy, within which a right must be asserted. It declares that in no case shall an action be brought after twenty years from the time when the right accrued.

6. LIMITATION OF ACTIONS—*Right a Statutory One — Infancy.* — There was no such thing as a limitation of action at common law. The right is wholly statutory, and there are no excep-

tions to the statute except those made by the statute itself.
The legislature had full power in the premises, and in the in-
terest of the repose of society put an ultimate limitation of
twenty years upon the right to bring an action, notwithstand-
ing infancy.

7. ESTOPPEL—*Investment by Wife's Trustee in Husband's Land—
Conveyance by Trustee to Legatees of Beneficiary—Discharge
of Trust.*—A trustee of a wife invested the trust fund in the
lands of her husband at a time when judgment creditors of
the husband were seeking to subject the lands to their judg-
ments. The investment, if not made at the request of the hus-
band, who was then living, was certainly made with his full
knowledge and approval, and neither he nor those claiming
under him, could afterwards deny the investment or the power
to make it. The subsequent conveyance of the land to the
legatees under the wife's will, at the request or with the con-
sent of all interested, operated as a discharge of the trust,
and vested the parties with the title to the lands.

8. HUSBAND AND WIFE—*Voluntary Payments by Husband.* — The
trustee of a wife was one of the judgment creditors of her hus-
band. At a time when other judgment creditors of the hus-
band were seeking to subject his lands to their judgments,
the trustee offered to purchase the property and his offer was
accepted by a decree in the suits. It was claimed by the heirs
of the husband that large payments were made by him on
judgments prior to that of the trustee, and also on the judg-
ment of the trustee. The husband was interested under his
wife's will in the trust fund held by the trustee. The sale
of the land to the trustee was made in the lifetime of the hus-
band with his full knowledge and approval.

*Held:* That if it be conceded that payments were made as afore-
said by the husband, they were voluntarily made, with full
knowledge of the facts, and it is not competent for his heirs
to have a different application made of those payments from
that made by him in his lifetime. He knew of the contents of
his wife's will, and if he chose to make payments which would
increase the amount to be received on her judgment against
him, neither his real nor personal representatives, after his
death, can call in question his appropriation of such pay-
ments.

9. PARTITION—*Finality of Decree—Report of Commissioner—Sale of
Property.*—A decree of partition confirmed the report of the
commissioner, and directed a sale of the land upon certain
terms and at a certain valuation to two of the heirs. The de-
cree directed that a special commissioner should execute and
deliver to the purchaser a deed, conveying the land.

*Held:* That the decree was a final decree so far as it affected the rights of the heirs as purchasers of the land, who had paid the purchase money into the hands of the officer of the court directed to collect it, and if it was thereafter lost, for any cause, the loss would fall upon the parties entitled to receive the money and not upon the purchasers of the land, and the decree was none the less final as to the purchasers because the commissioner was directed to make a report to the court.

10. FINAL JUDGMENTS AND DECREES—*Final as to Our Party and not as to Another.*—A decree may be final as to one party and not as to another.

11. FINAL JUDGMENTS AND DECREES—*Definition.*—A decree which disposes of the entire subject-matter of contest, leaving nothing to be done in the cause, is a final decree, and the contest has generally been over whether or not the particular decree under consideration was within this definition. The decisions draw a clear distinction between further *action in the cause* and measures necessary for the execution of the decree which were not *in the cause* but *beyond the cause.*

12. PROCESS—*Publication—Petitions.* — Where non-residents were proceeded against by order of publication, duly published and posted according to law, no other publication or notice against them was necessary "in any proceeding in court, or before a commissioner, or for the purpose of taking depositions, unless specially ordered by the court." Code 1904, section 3232. In the instant case, appellants had been so proceeded against and complained of decrees made in the cause, because they were based upon petitions filed in the cause, of which they had no notice. The petitions were entirely germane to the relief sought by the bill, and it was therefore proper to allow them to be filed.

13. JUDGMENTS AND DECREES—*Collateral Attack.*—The cause was referred to a commissioner to ascertain, among other things, the amount due on a certain judgment. The commissioner reported the full amount as unpaid, and his report was confirmed without exception.

*Held:* That the correctness of this decree could not be called in question in another suit.

14. JUDGMENTS AND DECREES — *Void. and Voidable Judgments.* — Where the court had jurisdiction of the subject-matter and of the parties, and the procedure was in the usual equity form, the decree of the court is plainly not void, and however premature or erroneous it may have been, it cannot be set aside except upon an appeal or bill of review filed within the time prescribed by law.

15. BILL OF REVIEW—*Time of Filing.*—Code of 1904, section 3233,

·  gives non-residents three years within which to appear and
ask to reopen a decree. After this time has expired a bill of
review comes too late.

16. BILL IN EQUITY—*Prayer for General Relief.*—Parties suing as
heirs of a husband and not as legatees under the will of his
wife, nor as heirs or distributees of any such legatees, the bill
showing that the claim under the husband was antagonistic to
a claim under the wife, or under any of her legatees, could
not, under the prayer for general relief, assert claims under
the will of the wife.

17. JUDGMENTS AND DECREES—*Impeachment for Fraud—Bill of Re-
view—Time of Filing.*—A party who sought to impeach a de-
cree for fraud acquired full knowledge of the litigation in Jan-
uary, 1913, and the decree of which she complained was rend-
ered on September 5, 1912. She had been proceeded against
as a non-resident and, under the provisions of section 3233
of the Code (1904), had three years from the latter date within
which to petition the court to have the case reheard, or any
injustice in the proceeding corrected. She did not avail her-
self of this privilege, and, after the lapse of more than five
years from the entry of the decree, she filed her bill to set
aside and impeach the proceedings in that case. Having failed
to avail herself of the plain remedy to redress any wrong
she may have suffered, it was too late for her to seek to im-
peach the proceedings by a separate and independent suit.

18. PARTITION—*Assignment of Whole Tract—Code of 1904.*—The
court under section 2564 of the Code of 1904 is given power
under certain conditions in partition proceedings to assign the
whole tract at a valuation to any party who will accept it and
pay therefor to other parties such sums of money as their in-
terest therein may entitle them to. Whether or not the con-
ditions exist is for the court to decide, but a wrong conclu-
sion on that question would not render its decree void.

19. MISTAKE — *Equity  Jurisdiction — Judicial  Errors.* — Mistakes
which form the basis of equity jurisdiction are the mistakes of
parties to the transaction, and not the mistakes of courts
in ascertaining the facts from the evidence, or in the application
of the law to the facts. Such mistakes of the court are not
technically mistakes, but judicial errors, and may be corrected
by appeal or bill of review, as the case may be, but not by an
original bill to correct a mistake.

20. APPEAL AND ERROR—*Bill of Review—Time of Filing.*—The sta-
tutes fix the time within which bills of review may be filed or
appeals taken, and if litigants permit this time to elapse with-
out availing themselves of the remedies provided for their re-
lief, they are without remedy. The case is not different from

Statement.

any other where a remedy is barred by the statute of limitations.

21. STATE—*Sovereignty—Jurisdiction Over Property.* — The State rightly has and exercises jurisdiction over all property within its territorial limits. It may determine the extent of title to property within its limits, and the methods of transferring such title.

22. JUDGMENTS AND DECREES—*Effect Upon Non-resident.*—The State cannot bring a non-resident within its limits, but when it has provided convenient and certain methods for giving notice to non-residents and these methods have been pursued, the decrees of its courts are as much binding upon non-residents as upon residents.

23. PARTITION—*Nature of Suit—Conclusive Effect of Decree Upon Residents and Non-residents.*—A suit to partition land is in the nature of a proceeding *in rem,* and when the parties interested have been proceeded against in the methods prescribed by law, there is no difference between the conclusive effect of the decree of partition upon residents and non-residents except that non-residents are given three years by the statute in which to have the case reheard and any injustice in the proceedings corrected, but after the lapse of this time a non-resident is as much bound as a resident.

24. CONSOLIDATION OF ACTIONS—*Chancery Causes.*—The consolidation of several causes is a very different thing from hearing them together. It is sometimes convenient, economical and appropriate that two or more chancery causes should be heard together, but it has been seriously doubted whether any two chancery causes are so identical that they may be consolidated. In the instant case the trial court committed error in consolidating the cases in judgment, as the parties, the subject-matter, and the relief sought were different in the several causes. The error, however, under the circumstances of the case, was harmless.

Appeal from a decree of the Circuit Court of Brunswick county. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Turnbull & Turnbull, Irby Turnbull, Hardway & Cathey* and *Litton B. Hickman,* for the appellants.

*Buford & Peterson,* for the appellees.

BURKS, J., delivered the opinion of the court.

The appeal allowed in this case was from a decree rendered in what is said to be four cases consolidated. The questions in controversy, however, were mostly raised in the case under the style of *Johnson* v. *Merritt,* which was a bill filed to impeach and set aside decrees and orders made in the other causes. The pleadings and facts are so complicated that it is difficult to make a clear statement that will cover the entire litigation.

In 1869 William H. E. Merritt was the owner of a tract of 1,719½ acres of land in Brunswick county, and there were numerous judgments against him. George C. Rives instituted his suit in 1869 against Merritt to subject his lands to the payment of the judgment lien which he held against him. In the same year, V. D. Ezell, who also had a judgment against Merritt, instituted his suit to subject Merritt's land to the payment of his judgment. The two causes were heard together and a commissioner was appointed to take an account of the liens on the real estate. This account was taken and the liens ascertained to amount to $12,000. Among the liens reported was one in favor of J. L. Merritt, trustee for Eliza W. Merritt, for $5,200, with interest from March 8, 1858. Eliza W. Merritt was the wife of William H. E. Merritt, and J. L. Merritt, their son, was the trustee who was authorized to receive and hold the judgment for the benefit of Eliza W. Merritt, "free from the control, claims, debts and demands of her husband, William H. E. Merritt, who may by deed, in her lifetime or by will at her death, dispose of the same as she shall choose." This judgment had been recovered in 1866, and was the fifth in order of priority of the judgments against William H. E. Merritt. At the October term, 1870, of the

court a decree was entered confirming the report of liens and directing R. D. Turnbull, as special commissioner, to sell a sufficiency of the lands of the defendant, William H. E. Merritt, to pay off the liens thereon unless Merritt should pay such liens within ninety days after being served with a copy of the decree.

Eliza W. Merritt died in the year 1874, owning no real estate and no personal property except the above-mentioned judgment against her husband. She left a will, made in 1866, of which the following is a copy:

"In the name of God, I make this my last will. I bequeath to my son, James L. Merritt, the gold watch given to me by my son, Dr. W. T. Merritt. I bequeath to my son, H. J. Merritt, the gold watch sold to my trustee, James L. Merritt, by my husband, W. H. E. Merritt. I bequeath my silverware to my daughters now living, to be equally divided among them.

"Out of my other property I wish a support to be provided for my husband, William H. E. Merritt, as long as he lives, but no part is to be liable for his debts.

"All my other property I wish to be equally divided among my children now living, to them and their heirs, but if any of them should die without lawful issue, then that child's part I wish divided among my surviving children. The bequest to my daughter, E. W. Merritt, are not in any event to be subject to any debts she may owe. I appoint my husband, W. H. E. Merritt, and my son, J. L. Merritt, my executors, and wish them to qualify without security. Witness my hand and seal this the 5th day of December, 1866.

"ELIZA W. MERRITT."

No question is raised as to the validity of this will, or the power of the testatrix to make it. She was given the

power to make a will by the terms of the settlement, and also had such power by virtue of the statute which had been in effect since the Code of 1849 (Code 1849, Ch. 122, sec. 3.). The judgment was her equitable separate estate.

At the April term, 1876, Commissioner Turnbull reported that he had not sold any of the land because of lack of bidders, although he had advertised the sale on two occasions. Upon the filing of this report, the court directed the commissioner to sell the entire tract either publicly or privately. At the April term, 1877, Commissioner Turnbull reported that he had received a proposition from J. L. Merritt, trustee of the said Eliza W. Merritt, in which the said J. L. Merritt, trustee, stated that he was willing to buy the whole tract of land at the price of $4.00 per acre, and the commissioner stated that he was willing to sell at that price if the court would confirm the sale. The offer of the trustee to purchase, as aforesaid, was (except as to the signature) in the handwriting of William H. E. Merritt, who was still living, and was as follows:

"I, as trustee of Mrs. E. W. Merritt, will give three dollars per acre, amounting to five thousand one hundred and sixty-three dollars ($5,163.00) for the entire tract of land belonging to W. H. E. Merritt, and on which he resides, containing 1,721 acres of land, and pay one-third, $1,721.00, in cash by giving a receipt for the payment of the Rives debt, which is assigned to me, now about $610.00, and $1,-111.00, which will be a payment in part of the decree in my favor against the said W. H. E. Merritt. The judgment in favor of Rives, and the decree in my favor appear in the report of Commissioner Claiborne filed in these suits. The deferred payments will be secured by my bond without security, the title being retained till the last payment is made.

"J. L. MERRITT, Trustee."

The court, by its decree of April, 1877, accepted the of-
fer of J. L. Merritt, trustee, for the whole tract of land,
and declared the sale absolute and binding, and directed
that the trustee should, within sixty days after the adjourn-
ment of the court, pay the costs of suit and expense of sale,
and the four liens which were reported ahead of that in
favor of the trustee, and credit the balance of the purchase
money on the judgment in his favor as trustee, thus con-
suming the whole purchase money, and directed that "upon
the same being done, Commissioner R. D. Turnbull would
make a deed with special warranty to the said James L.
Merritt, trustee as aforesaid, and report his proceedings
to the court." William H. E. Merritt died in 1885. Noth-
ing further was done in the cause until 1894, when W. G.
Burton filed his petition therein, setting up the ownership
of the judgment which had been reported in favor of Wal-
ton, and which was prior to the judgment of the trustee,
and praying that the amount of it might be decreed to be
paid to him, upon which petition a decree was entered di-
recting J. L. Merritt, trustee for Eliza W. Merritt, to pay
said judgment.

[1]  In 1897, the surviving children of Eliza W. Mer-
ritt filed their petition in the cause, setting forth the pro-
ceedings theretofore had in it, and stating that William H.
E. Merritt had died, and that Commissioner R. D. Turn-
bull had also died without having executed the deed pro-
vided for in the decree of 1877. The petition also set out
that there was no longer any necessity for the conveyance
being made to J. L. Merritt as trustee, and that the peti-
tioners desired that the land should be conveyed directly
to them, subject to the limitations contained in the will of
Eliza W. Merritt, and praying that a commissioner be ap-
pointed to convey the tract of land to the petitioners, to be
held by them under the provisions of the will of the said
Eliza W. Merritt, subject, however, to the lien of the Bur-

ton judgment; the petitioners consenting that the conveyance should be made subject to such lien. The decree of the April term, 1897, in accordance with the prayer of the petition, admitted the petitioners as parties plaintiff in the two causes of *Rives* v. *Merritt* and *Ezell* v. *Merritt,* heard together, and with the consent of Burton, by counsel, appointed E. P. Buford, commissioner, to convey to the petitioners the tract of 1,719½ acres of land in the petition mentioned, to be held by them jointly in accordance with the provisions of the will of the said Eliza W. Merritt, and subject to the judgment aforesaid, held by W. G. Burton, assignee of M. R. Walton, and directed the commissioner to report his proceedings to the court. This decree disposed of the entire subject of litigation, and concluded by directing the commissioner to report his proceedings to the court. There was nothing for him to report except that he had made the deed in accordance with the decree, after he had done so. The practice in the different circuits of the State is not uniform on that subject. In some of them, where a commissioner is directed to make a deed, he is required to report to the court when he has executed the decree by making the deed; in others, no such report is required, but whether required or not it in no way affects the finality of the decree. The decree was, in all other respects, final, and the fact that the commissioner was required to report when he had made the deed did not render it any the less final.

[2] It is true that neither of the appellants was a party to these suits at that time. They are here claiming part of the tract of 1,719½ acres of land as heirs of William H. E. Merritt. At the time the decree of 1877 was entered, William H. E. Merritt was living and a party defendant to these two suits. The offer made by J. L. Merritt, trustee, to purchase the land at $4.00 per acre was accepted by that decree, the decree stating, amongst other things, that it "doth make the sale absolute and binding." There can be no doubt

that this constituted a judicial sale (*McAllister* v. *Harman,* 101 Va. 17, 42 S. E. 920), and upon the entry of that decree J. L. Merritt, trustee, became the equitable owner of the tract of land, and trustee of the purchase money for the heirs of the vendor, and the vendor became the equitable owner of the purchase money and a trustee of the legal title for the benefit of the purchaser, and specific perform-ance could have been enforced by either against the other upon default in compliance with the terms of sale, and this could have been done in the suits in which the decree was entered.

[3] In discussing this subject and the different ways the transaction is viewed at law and in equity, Mr. Pomeroy says: "The view which equity takes of the juridical relations resulting from the transaction is widely different. Applying one of its fruitful principles, that what ought to be done is regarded as done, equity says that from the contract, even while yet executory, the vendee acquires a 'real' right, a right of property in the land, while though lacking a legal title, and therefore equitable only, is none the less the real beneficial ownership, subject, however, to a lien of the vendor as security for the purchase price as long as that remains unpaid. This property in the land, upon the death of the vendee descends to his heirs, or passes to his devisees, and is liable to the dower of his widow. The vendor still holds the legal title, but only as trustee, and he in turn acquires an equitable ownership of the purchase money; his property, as viewed by equity, is no longer real estate in the land, but personal estate in the price, and if he dies before payment, it goes to his administrator, and not to his heirs. In short, equity regards the two contracting parties as having changed positions, and the original estate of each as having been 'converted,' that of the vendee from personal into real estate, and that of the vendor from real into personal property." 1 Pomeroy's Equity (2d ed.), sec. 105. See also secs. 368, 372.

[4] The court could have compelled J. L. Merritt, trustee, to comply with the terms of the sale by a rule and proceedings had thereon for a resale at his risk. The proceeding by rule has been likened to a suit for specific performance. *Clarkson* v. *Read*, 15 Gratt. (56 Va.) 288. After the entry of that decree, William H. E. Merritt held nothing but the bare legal title to the tract of land aforesaid. If J. L. Merritt, trustee, had complied with the terms of that decree, and Turnbull, commissioner, had, in pursuance thereof, conveyed the land to him, the deed from Turnbull would have conveyed all the estate, legal and equitable, of all the parties to the suit to J. L. Merritt, trustee. *Bellenot* v. *Laube's Ex'r*, 104 Va. 842, 52 S. E. 698. Such a deed would have operated to convey the title of the parties as of the date of the decree, and the death of William H. E. Merritt after that time would have been immaterial. As a matter of fact, however, Turnbull died before the deed was made, and the record does not show when the payments required to be made by J. L. Merritt, trustee, were actually made. The decree of 1897 substituted E. P. Buford as commissioner in the place of Turnbull, and directed him to make the deed to the beneficiaries under the will, instead of to the trustee. It is true that at the time this decree was entered, William H. E. Merritt was dead, but it is doubtful if it was necessary to have the suit revived against his heirs before the decree was entered. If, in pursuance of the decree of 1877, Turnbull had made the deed after the death of William H. E. Merritt, we see no good reason why the deed should not have been operative and conveyed the title of William H. E. Merritt in the land, and as E. P. Buford, commissioner, was substituted to do the same thing, it would seem that it was not necessary to revive the suit against the heirs of William H. E. Merritt before entering the decree of 1897. But, however this may be, William H. E. Merritt, at the time of his death was

seized of the mere naked legal title and that was all that passed to his heirs, and even if they should have been made parties before the decree of 1897 was entered, they held nothing but the naked legal title which the court would have compelled them to convey to J. L. Merritt, trustee, upon compliance with the terms of the decree of 1877; so that, although the appellants were not parties to the suit at the time the decree of 1897 was entered, they owned no substantial interest in the tract of land as heirs of William H. E. Merritt, and as holders of the legal title they might, at any time, have been compelled to convey it to J. L. Merritt, trustee, upon compliance by him with the decree of 1877.

[5]     Furthermore, the deed from Buford, commissioner, to J. L. Merritt and others was executed on May 12, 1897. From that time on the grantees in that deed held, used, occupied and enjoyed the land, openly and notoriously claiming under that deed, until the institution of the suit of the complainants to avoid the decrees aforesaid. The decree of 1897 and the deed made in pursuance thereof was an open disavowal of record that the grantees in that deed held the land jointly with the appellants. The act of limitation ran from that time against the appellants as to any claim of ownership in the land as heirs of William H. E. Merritt. It is true that the appellants were infants and non-residents of the State. But the statute making a saving in favor of infants expressly provides an ultimate limitation, notwithstanding infancy, within which a right must be asserted. It declares that in no case shall an action be brought after twenty years from the time when the right accrued. Code 1904, sec. 2931.

[6]     There was no such thing as a limitation of actions at common law. The right is wholly statutory, and there are no exceptions to the statute except those made by the statute itself. *Vance* v. *Vance,* 108 U. S. 514, 2 Sup. Ct.

854, 27 L. Ed. 808; Burks' Pl. & Pr. 378, and cases cited. The legislature had full power in the premises, and in the interest of the repose of society put an ultimate limitation of twenty years upon the right to bring an action, notwithstanding infancy. This period had more than elapsed before the appellants brought their suit. The decree made in 1897 was not assailed until the suit was brought in 1918. The peace of society demands that there should be, at some time, an end put to litigation, and the experience of civilized communities has shown the wisdom of such provisions, and hence they are favored. It is better that an individual should, in exceptional cases, suffer wrong, than that a community should be kept in turmoil. Title to property of all kinds should not be left in doubt and uncertainty for indefinite periods.

[7]. In 1911, all of the children of Eliza W. Merritt who survived her had died except the appellee, H. J. Merritt, and a daughter, Lucy M. Burton. On June 7, 1911, they filed their bill in the Circuit Court of Brunswick county, setting out the death of their mother, Eliza W. Merritt, testate, filing a copy of the will, and asking for a construction of the will and a partition of the property devised thereby. The bill alleges that the testatrix was, at the time of her death, the owner of the equitable title to a certain tract or parcel of land situate in Brunswick county, containing 1,719½ acres, of which they ask that partition be made. The bill further sets forth the names of the children of the testatrix, and of the descendants of two of them who had died in her lifetime. These descendants, including the appellants, were made parties defendant. There was some doubt as to the proper construction of the will, and under one construction (which was the one finally adopted by the court) these descendants, while not entitled to any of the original shares under the will of the testatrix, would inherit an interest from shares derived by one child from

another as they successively died, and for this reason, and in order to cover all possible interests, the appellants were made parties to the suit. The complainants were in error in stating that the testatrix at the time of her death was the owner of an equitable title to the tract of land in Brunswick county. At the time of her death she had simply a lien by virtue of her judgment on the land, not an interest in the land itself, but the subsequent purchase by her trustee was an investment of the trust fund to that extent in the tract of land, which the beneficiaries under her will had a right to elect to take in lieu of the money due on the judgment, and which they in fact did elect to take. The trustee was charged with the collection of the judgment and, though not directed to invest it in any particular way, the trust fund went into the property, and the beneficiaries thereof had a right to follow it. The investment, if not made at the request of William H. E. Merritt, who was then living, was certainly made with his full knowledge and approval, and neither he nor those claiming under him can now deny the investment or the power to make it. The subsequent conveyance of the land to the legatees under Mrs. Merritt's will, at the request or with the consent of all interested, operated as a discharge of the trust, and vested the parties with the title to the lands. *Sims* v. *Sims,* 94 Va. 580, 27 S. E. 436, 64 Am. St. Rep. 772. So that, while the statement in the bill is not exactly accurate, it does not affect the result. The appellants were non-residents of the State and were proceeded against as such.

[8] It is claimed that the judgments prior to that of J. L. Merritt, trustee, were paid off by W. H. E. Merritt in his lifetime, and also that large payments were made by him, or out of his property, on the judgment of J. L. Merritt, trustee. W. H. E. Merritt was interested, under the will of his wife, in the trust fund held by J. L. Merritt, trustee. The sale of the land to the trustee had been made

23

in his lifetime, if not at his instance, at least with his full knowledge and approval. There was still a large balance due on the judgment in favor of J. L. Merritt, trustee, and if it be conceded that payments were made as aforesaid by W. H. E. Merritt, they were voluntarily made, with full knowledge of the facts, and it is not competent for his heirs to have a different application made of those payments from that made by him in his lifetime. He knew of the contents of his wife's will, and if he chose to make payments which would increase the amount to be received on her judgment against him, neither his real nor personal representatives, after his death, can call in question his appropriation of such payments.

[9, 10] After the court had construed the will of Mrs. Eliza W. Merritt, and ascertained that the interest of H. J. Merritt and Lucy M. Burton in the tract of land amounted to five-sixths thereof, and that the other one-sixth was divisible among the heirs of J. L. Merritt and Jennie M. Flournoy, the said H. J. Merritt and Lucy M. Burton filed their petition in the cause, setting out the fact that the tract of land was subject to the judgment of Mrs. Burton and also to the debts of J. L. Merritt, and asking that partition might be made of the land so as to allot to petitioners their five-sixths of the land, and to make partition of the remaining one-sixth among the heirs of J. L. Merritt and Jennie M. Flournoy, including the petitioners, and if necessary that the one-sixth of the whole tract of land should be sold for partition, if it was not susceptible of partition in any of the modes prescribed by law, and the proceeds divided among the heirs according to their respective rights. Upon the coming in of this petition, a decree was entered in the cause, referring it to a commissioner to ascertain the value of the entire tract, and whether or not the one-sixth interest of the heirs of J. L. Merritt and Jennie M. Flournoy, after payment of the debts, was susceptible of partition in

kind, or whether partition should be made by an allotment of part and a sale of the residue, or any other method prescribed by statute in such case made and provided. An account was also directed of the liens binding on the land and upon the shares of any of the devisees. In compliance with this order of reference, the commissioner reported the judgment of Mrs. Burton, amounting to $2,683.05, as a subsisting lien upon the land. He also reported that the aggregate value of the tract of land was $25,000, and that a division of the one-sixth interest by allotment to the parties entitled thereto according to their respective rights was impracticable for certain reasons set forth in the report and recommended the sale of one-sixth interest as a whole and division of the proceeds thereof among the parties according to their respective rights. A decree was thereupon entered confirming the report of the commissioner, and directing a sale of so much of the tract of land as might be necessary to pay off and satisfy the judgment of Mrs. Burton and costs of the suit, or so much of the standing timber on the land as might be necessary for that purpose. The decree then states that, it appearing to the court from the report of the commissioner that partition cannot conveniently be made of the one-sixth interest in said tract of land which descended to the parties as heirs at law of J. L. Merritt and Jennie M. Flournoy, and that it was suggested that H. J. Merritt and Lucy M. Burton might desire the privilege of accepting the entire tract at the value of $25,-000, having the same allotted to them, and paying therefor to the other parties such sums of money as their interest in the land might entitle them to. The decree then gave H. J. Merritt and Lucy M. Burton the privilege of accepting the whole tract of land at that valuation within thirty days, and provided that, in the event they should accept it, Commissioner Lewis should collect from them a sufficient sum to pay the Burton judgment, and the interest of the

other parties in the land, and to defray the costs of the suit. At the September term, 1912, Lewis, commissioner, reported that H. J. Merritt and Lucy M. Burton had, within the time prescribed, determined to accept the whole tract of land at the valuation stated, and had paid to him in cash the sum of $3,829.23, which was sufficient to pay off the Burton judgment and claims of other parties, and the costs as specified in the decree of June, 1912. It also showed that the commissioner had disbursed a large portion of the funds received by him in accordance with the rights of the parties, and that he still had in his hands the sum of $2,-037.74, which was subject to disbursement in the manner specified in the decree. The decree further directed that B. A. Lewis, who was appointed a special commissioner for the purpose, should execute and deliver to H. J. Merritt and Lucy M. Burton a deed, conveying to them, jointly and with special warranty, the tract of land aforesaid, and decreed to the parties entitled the fund shown to be in the hands of Commissioner Lewis. The decree then directs Lewis to report his proceedings to the court. It will be observed from the above recital that H. J. Merritt and Lucy M. Burton had accepted the terms of purchase prescribed by the decree of June, 1912, and had paid the whole purchase money to the commissioner of the court directed to receive it. The commissioner had also been directed to make a deed to the purchasers. This decree was certainly a final decree so far as it affected the rights of Merritt and Burton as purchasers of the land. They had paid the money into the hands of the officer of the court directed to collect it, and if it was thereafter lost, from any cause, the loss would fall upon the parties entitled to receive the money and not upon the purchasers of the land. *Pulliam* v. *Tompkins*, 99 Va. 602, 39 S. E. 221; 2 Barton Chy. 1092. Every question sought to be litigated by the bill had been decided, and the whole object of the litigation had been accomplished

even down to the direction of the payment of the costs to the officers of the court. Nothing remained to be done except for the commissioner of the court to pay out as directed by the decree of September, 1912, the funds shown to be in his hands. No one had any interest whatever in this matter except the beneficiaries of that fund mentioned in the decree. If the money was not paid, they could have executions issued and recover it, and if it was lost, it was not the loss of the complainants. They had no manner of interest in the disbursement of this fund. The case, certainly so far as they were concerned, was ended, and the decree was none the less final as to them because the commissioner was directed to make a report to the court. *Johnson v. Anderson*, 76 Va. 770. Whether the decree was final as to all the parties, it is not necessary to decide, as a decree may be final as to one party and not as to another. *Royall's Adm'rs v. Johnson*, 1 Rand. (22 Va.) 421; *Taylor v. Forbes' Adm'r*, 101 Va. 658, 44 S. E. 888; Hogg's Eq. Proc., sec. 569.

[11] Nothing further was done in the cause until September 7, 1917, when Commissioner Lewis reported that he had fully disbursed the funds with which he was chargeable in the cause, and a decree was entered striking the cause from the docket. We have repeatedly held that a decree which disposed of the entire subject matter of contest, leaving nothing to be done in the cause, is a final decree, and the contest has generally been over whether or not the particular decree under consideration was within this definition. The decree of the April term, 1897, in *Rives and Ezell v. Merritt*, and the decree of September 5, 1912, in the case of *Merritt v. Johnson*, the details of which have been hereinbefore set forth, are so clearly final decrees within the definition aforesaid, that no further discussion of the subject is necessary. The decisions draw a clear distinction between further *action in the cause* and measures necessary for the execution of the decree which was not *in the cause,*

but *beyond the cause.* In neither of the decrees last mentioned was any further action *in the cause necessary.* We refer to only a few of the cases on final decrees which will give reference to others. *Cocke's Adm'r* v. *Gilpin*, 1 Rob. (40 Va.) 20; *Ryan's Adm'r* v. *McLeod*, 32 Gratt. (73 Va.) 367; *Rawlings' Ex'r* v. *Rawlings*, 75 Va. 76; *Johnson* v. *Anderson*, 76 Va. 766; *Martin* v. *So. Salem Land Co.*, 97 Va. 349, 33 S. E. 600; *Collier* v. *Seward*, 113 Va. 228, 74 S. E. 155; *Smith* v. *Holland*, 124 Va. 663, 98 S. E. 676.

[12]   Appellants complain of decrees made in the cause in May and June, 1912, because they were based upon petitions filed in the cause by H. L. Merritt and Mrs. Burton, of which they had no notice. The petitions were entirely germane to the relief sought by the bill, and it was proper to allow them to be filed. The appellants were proceeded against by order of publication which had been duly published and posted according to law, and no other publication or notice against them was necessary "in any proceeding in court, or before a commissioner, or for the purpose of taking depositions, unless specially ordered by the court." Code 1904, sec. 3232.

[13]   Appellants also insist that the judgment held by Mrs. Burton and for which, in part, the land was sold, had been paid prior to the sale. The cause had been referred to a commissioner to ascertain, amongst other things, the amount due on this judgment. He reported the full amount as unpaid, and his report was confirmed without exception. The appellants cannot in this cause call in question the correctness of that decree.

[14, 15]   On March 1, 1918, the appellant, W. H. Johnson, filed a petition in the last-mentioned suit, which was in the nature of a bill of review. This bill of review sought to set aside all the decrees entered in the cause on the ground that they were "premature, erroneous and void." The court had jurisdiction of the subject matter, and of the parties

and the procedure was in the usual equity form. The decrees, therefore, were plainly not void, and however premature or erroneous they may have been, they cannot be set aside except upon an appeal or bill of review filed within the time prescribed by law. If a court has jurisdiction of the subject matter and of the parties, and proceeds according to established methods, its decree is never void, however erroneous it may be. The whole basis of the bill under consideration is that the decree entered in 1917 was the final decree, and not the decree of 1912. As we have pointed out, the decree made September 7, 1912, was a final decree. The time had long ago expired for the filing of the bill of review. The statute gives non-residents three years within which to appear and ask to re-open a decree. Code 1904, sec. 3233. This time had also expired long before the bill of review was filed in 1918. Plainly the bill of review came too late.

[16]   On April 6, 1918, the appellant, W. H. Johnson, filed an original bill against H. J. Merritt, in his own right and as executor of Lucy M. Burton, deceased, and others, in which he reviews all of the antecedent litigation relating to the tract of 1,719½ acres of land, and seeks to avoid all the decree relating thereto on the ground of fraud committed upon him and certain other heirs of William H. E. Merritt. The bill seeks to set aside eighteen deeds, which are specifically enumerated in the bill, one of which was made more than twenty years before the bill was filed. The bill also seeks to set aside the sale made to J. L. Merritt, trustee, in the lien creditors' suit in 1877, on the ground that it was an effort to acquire the property for Eliza W. Merritt's estate, and thereby to deprive him and others of their rights. He charges that this effort was the commencement of the fraudulent scheme to deprive him and others of their just share in the estate of the said William H. E. Merritt, although this sale was made in the lifetime of William H.

E. Merritt, seven or eight years before his death, and two years before the complainant was born, and four years before his sister was born. In appellants' reply brief it is said, "that the suit of *Johnson* v. *Merritt* appearing in the record was brought by the appellants to have set aside all proceedings in the suits of *Rives and Ezell* v. *Merrit* and *Merritt* v. *Rives*." It is claimed in the bill that the land belonged to William H. E. Merritt; that he died seized and possessed thereof, and prays that it may be divided among the heirs of William H. E. Merritt according to their respective rights, and if it cannot be divided in kind, that it may be sold for the purpose of partition. W. H. Johnson was the sole complainant in this cause. His sister, Margiana Johnson, was made a defendant, but subsequently by answer and petition was admitted as party complainant, and united in the allegations of the bill and its prayer for relief. They sued as heirs of William H. E. Merritt and not as legatees under the will of Eliza W. Merritt, nor as heirs or distributees of any such legatees. The bill throughout shows that the claim under William H. E. Merritt was antagonistic to a claim under the will of Eliza W. Merritt, or under any of her legatees, so that the prayer for general relief could not, under the allegations of the bill, cover the latter claims, and hence they cannot be set up in this suit. *Hurt* v. *Jones*, 75 Va. 341, 351. It is unnecessary, therefore, to consider the nature of the estate which the legatees of Mrs. Eliza W. Merritt took under her will. Furthermore, as hereinafter pointed out, the time had elapsed within which the appellants could contest the construction placed by the trial court on the will of Mrs. Merritt.

The chief ground of fraud relied upon was that counsel for H. J. Merritt, at the latter's instance, had written a letter on May 27, 1911, to the appellant, Margiana Johnson, assuring her that the object of the suit of *Merritt* v. *Rives* was merely to have a construction of the will of Mrs.

Merritt, and was not brought adversely to her or any of the grandchildren of Mrs. Merritt, but that it was necessary that all of the grandchildren should be made parties in order that the rights of every one might be ascertained; that neither of the complainants in the suit wished any change in the manner in which the land was then held, but desired to know what their interests were, and the writer was of the opinion that after they had been ascertained, the plaintiff would not want to take any further steps than such as might be actually made necessary by the action of the court. This letter was not addressed to the appellant, W. H. Johnson, and he never saw it or heard of it, according to his own statement, until the latter part of the year 1917. It could not, therefore, have affected any action he might have wanted to take in any way whatever. He did not even know of the pendency of the suit until the date last mentioned.

The appellant, Margiana Johnson, is in no better position. The letter of May 27, 1911, addressed to her, appears from the testimony to have been written in the utmost good faith. It represented the attitude of the parties at that time to the litigation, and the subsequent conduct of the parties and the proceedings in the litigation do not in any way impeach the good faith of that letter. The parties, at all times, intended to preserve the large tract of land intact for the use of the legatees of Mrs. Merritt during their lifetime, and that after their death it should go to the grandchildren and great-grandchildren of the testatrix. But it developed subsequently that it was absolutely essential to raise money to pay the judgment held by Mrs. Burton, some indebtedness of J. L. Merritt, one of the legatees, and to make some improvements on the house so as to make it habitable. It was necessary that money should be raised for these purposes, and it was not feasible to do it otherwise than by a sale of part of the land. If it had been prac-

ticable to set aside to the appellants their share of the land, in kind, that share would still have been liable for its share of the debts aforesaid. But Mr. Merritt and Mrs. Burton, with the aid and advice of their counsel, conceived the idea that it would be better for all parties to let Mr. Merritt and Mrs. Burton take the whole tract of land at a fair valuation, and pay such sums of money as was necessary for the purposes aforesaid. They elected to do this, which cleared up the title to the land so that they could raise the money by using the land as security, and this they did. And as soon as this was done, the appellant, Margiana Johnson, was notified fully and clearly of everything that was done. This letter of explanation, written by counsel for Mr. Merritt and Mrs. Burton, was accompanied by a check for her share of the land. Her statement that she thought that only a small part of the land had been sold, and that this was her share of it is a manifest error, for the letter which was written by the counsel concludes as follows: "The land was valued at $25,000.00, which is a very liberal estimate. Your share, in accordance with the principle above stated, was 1/48. Mr. H. J. Merritt and Mrs. Lucy M. Burton were allowed by the court to purchase the whole tract at $25,000, the ascertained value, and pay to the other heirs in cash the value of their respective interests. The check which I now enclose covers your interest in the land, after deducting your portion of the costs of the suit, your portion of the judgment in favor of Mrs. Burton, and your portion of the indebtedness against the estate of J. L. Merritt, which his personal property was insufficient to satisfy, and it also includes your portion of the small amount of rents and profits to which you were entitled. Please sign the receipt below and return this letter to me at your early convenience."

[17] This letter was handed to her counsel whom she had employed in Memphis, Tenn. There was a very lengthy

correspondence between counsel for Mr. Merritt and Mrs. Burton, on the one side, and the complainant, Miss Johnson, and her counsel, on the other side. This correspondence manifests a desire on the part of Mr. Merritt and Mrs. Burton and their counsel to give the fullest information as to the litigation about the land. It is too lengthy to be inserted in this opinion. This correspondence gave a full history of the litigation and just what was done in it, and shows that what was done was approved by counsel of Miss Johnson. It may be said of this information as was said by counsel for Miss Johnson in their reply brief with reference to another matter, that "from the correspondence it is manifest that Mr. Maury knew of the attachment proceedings and authorized them, which was knowledge of Miss Johnson regardless of whether or not Mr. Maury fully advised her as to the object and purpose of the said suit." This knowledge was acquired by Miss Johnson, as we have seen, in January, 1913, and the decree of which she now complains was rendered on September 5, 1912. She had been proceeded against as a non-resident and, under the provisions of section 3233 of the Code (1904), had three years from the latter date within which to petition the court to have the case re-heard, or any injustice in the proceedings corrected. She did not avail herself of this privilege, and now, after the lapse of more than five years from the entry of the decree, she files her bill to set aside and impeach the proceedings in that case. Having failed to avail herself of the plain remedy to redress any wrong she may have suffered, it is now too late for her to seek to impeach the proceedings by a separate and independent suit.

[18-20]   It is insisted that the court was without jurisdiction to assign the whole tract to Mr. Merritt and Mrs. Burton, and that therefore its decree was void. The court is given this power under certain conditions by section 2564 of the Code (1904). Whether or not the conditions existed

was for the court to decide, but a wrong conclusion on that question would not render its decree void.  We have already recited the proceedings by which the whole tract was assigned to Mr. Merritt and Mrs. Burton.  These proceedings were in accord with the statute, and the case in this respect is not in conflict with our holding in *Roberts* v. *Hagan,* 121 Va. 573, 93 S. E. 619.  Nor can the bill in the case in judgment be sustained as a bill to correct a mistake.  Mistakes which form the basis of equity jurisdiction are the mistakes of parties to the transaction and not the mistakes of courts in ascertaining the facts from the evidence, or in the application of the law to the facts.  Such mistakes of the court are not technically mistakes, but judicial errors, and may be corrected by appeal or bill of review, as the case may be, but not by an original bill such as was filed in this case.  If such a bill were allowable, there would be no end to litigation.  The time for a bill of review or appeal having expired, if the trial court put a wrong construction on the will of Mrs. Merritt, or erroneously assigned the whole tract to two of the parties, the appellants are without remedy to correct it.  The statutes fix the time within which bills of review may be filed or appeals taken, and if litigants permit this time to elapse without availing themselves of the remedies provided for their relief, they are without remedy.  The case is not different from any other where a remedy is barred by the statute of limitations.  *Rawlings' Ex'r* v. *Rawlings, supra; Jefferson* v. *Gregory,* 113 Va. 61, 73 S. E. 452, and cases cited.

[21-23]  The State rightly has and exercises jurisdiction over all property within its territorial limits.  It may determine the extent of title to property within its limits and the methods of transferring such title.  It cannot bring a non-resident within its limits, but when it has provided convenient and certain methods for giving notice to non-residents and these methods have been

pursued, the decrees of its courts are as much binding upon non-residents as upon residents. A suit to partition land is in the nature of a proceeding *in rem*, and when the parties interested have been proceeded against in the methods prescribed by law, there is no difference between the conclusive effect of the decree of partition upon residents and non-residents except that non-residents are given three years by the statute in which to have the case re-heard and any injustice in the proceedings corrected, but after the lapse of this time a non-resident is as much bound as a resident. *Arndt* v. *Griggs,* 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918; Code, sec. 3233; *Burwell* v. *Burwell's Guardian,* 78 Va. 574; *Fayette Land Co.* v. *L. & N. R. Co.,* 93 Va. 274, 24 S. E. 1016.

In *Merritt* v. *Rives* it is stated in the bill that the testatrix, Eliza W. Merritt, "at the time of her death was the owner of an equitable title to a certain tract or parcel of land situate in Totaro magisterial district, in the county of Brunswick, Virginia, containing 1,719½ acres." * * * "The said J. L. Merritt, as trustee for the said Eliza W. Merritt, having become the purchaser of the said lands in the chancery suits of *Rives* v. *Merritt* and *Ezell* v. *Merritt,* now pending in this honorable court." It was a mistake to say that this purchase was made by the trustee in the lifetime of Mrs. Merritt, and that she owned an equitable title to it at the time of her death. The purchase was made after her death by the trustee with the trust funds belonging to her estate, and the conveyance was made to the beneficiaries under her will to be held by them subject to the provisions of her will. This was not such a material mistake as would support the bill filed by the appellants to correct it. We are of opinion that the allegations of fraud, accident or mistake set forth in said bill are not sustained by the evidence.

[24] The consolidation of several causes is a very dif-

ferent thing from hearing them together. It is sometimes convenient, economical and appropriate that two or more chancery causes should be heard together, but it has been seriously doubted whether any two chancery causes are so identical that they may be consolidated. The right to consolidate was doubted by Chief Baron Richards, in *Forman* v. *Blake,* 7 Price, 654, and was condemned by two out of three judges of this court, in *Claiborne* v. *Gross* and *Wimbush* v. *Gross,* 7 Leigh (34 Va.) 339. In *Barger* v. *Buckland,* 28 Gratt. (69 Va.) 850, 868, it is doubted if such consolidation can be made without consent. 2 Barton's Chy., pr. 861. Whatever may be the law on this subject, however, it is clear that the trial court committed error in consolidating the four causes in the decree complained of. In the case in judgment the parties, the subject matter, and the relief sought were different in the several causes. It was manifestly improper, therefore, for them to have been consolidated. The error, however, under the circumstances of the case, was harmless.

Under the view which we have taken of the case it is not necessary to deal with the question of ratification by the appellants, nor with sundry other questions which were argued both orally and in briefs.

Upon the whole case, we are of opinion that there is no error in the decree of the circuit court, and it is therefore affirmed.

*Affirmed.*

SIMS, J., concurs in the result.