## Richmond.

WOODING'S EX'X v. BRADLEY'S EX'OR AND ALS.

December 7, 1881.

1. PRACTICE IN CHANCERY—*Exceptions to report after confirmation.*—So long as cause is retained on docket the court may receive exceptions to commissioner's report, even after its confirmation, if clearly shown that, if carried out, the report would work injustice.

2. IDEM—*Idem—Case at bar.*—Report of decedent's debts allowed T, a creditor, $133.67, balance; report confirmed without exceptions; amount is paid T, but cause is retained on docket. Later, T files petition for rehearing, on the ground that commissioner had allowed on his claim a credit of $400, which had not been paid to him nor to any one authorized to receive it.

HELD:

    It was not error to rehear the cause and correct the report.

3. IDEM.—*Rehearing* of interlocutory decree is within the sound discretion of the court, and will be granted if essential to the ends of justice.

4. PAYMENT—*Agency—Burden of proof.*—Debtor paying one not possessing the note or evidence of the debt, assumes the risk of the authority of the payee to collect the money, and the *onus probandi* is on debtor to prove that the payee had such authority.

Appeal from decree of corporation court of Danville. Opinion states the facts.

*E. E. Bouldin,* for the appellant.

*Ould & Carrington* and *E. Barksdale, Jr.,* for the appellees.

STAPLES, J., delivered the opinion of the court.

Bradley's executor, in June, 1873, filed a creditor's bill, making Jane A. G. Wooding, executrix of W. H. Wooding, deceased, and others, parties defendant.

An account of the debts of Wooding was ordered to be taken, and the report of the commissioner was made in July, 1874; and in said report the sum of $133.67, as principal and interest, was found to be the balance due to Joseph M. Terry.

The report was confirmed in October, 1874, as to every matter except one claim, left open by the court, and commissioners were appointed to sell the lands of the decedents to pay the debts reported.

Subsequently the commissioners were directed to pay the debts reported, which was accordingly done. In August, 1876, and January, 1877, Terry was paid the sum reported by the commissioner. In February, 1877, Terry presented a petition, wherein he sets forth that the amount due him, as of 22d November, 1851, was $435.13, instead of $58.19, as of September 25, 1852; and that the error of the commissioner arose from the fact that he allowed as a credit upon the bond held by Terry the sum of $400, which he (Terry) never had received, and which he (Terry) never authorized to be paid to any one in his behalf.

At the March term of 1877 the court took time to consider whether Terry should be allowed to file his petition; but in the following April leave was given and a rule awarded against the executrix to show cause why the prayer of the petition should not be granted.

·The executrix answered the rule, and upon the coming in of the answer, the court recommitted the account to the former commissioner, with directions to take testimony.

At the November term, 1877, the court modified its former decree, and directed that $400, with interest from September 25, 1852, in addition to the amount formerly reported, should be paid to Terry out of the assets of Wooding's estate, there being enough in the hands of the commissioner to do so.

Two principal objections are made to the action of the

court below.    First, that the court had no power or right
to entertain the petition of Terry; and, secondly, that if it
had, the decree allowing Terry's claim to the $400 and in-
terest was erroneous.

First, therefore, did the court have the power or right to
receive the petition of Terry?

It is true that no exception was made by Terry to the
commissioner's report between the date of its filing and its
confirmation, and none, indeed, until the filing of the peti-
tion.    But it must at the same time be remembered that
the court continued to have the principal cause in hand
until long after Terry's petition was filed and its judgment
thereon declared.

There is no rule of law or practice which would forbid
or prevent a court, so long as it retained a cause under its
consideration, from receiving and entertaining an excep-
tion to a commissioner's report, even after the same had
been confirmed, if it should be clearly shown that the re-
port, if carried out, would be productive of injustice and
wrong.

It is, however, unnecessary to consider this point further,
because the appellee did not rely upon a mere exception,
but he filed his petition for a rehearing, which it was com-
petent for the court to entertain so long as the decree was
interlocutory.    That no final decree had been rendered at
the time the petition was presented, is too clear to admit of
discussion.    According to the settled rule of the court, a
rehearing is a matter resting in the sound discretion of the
chancellor, and will be granted where it is manifest that
the justice of the case has not been attained.

It only remains to enquire whether the court committed
an error in granting the rehearing and in setting aside so
much of the decree of October, 1874, as allowed Wooding's
estate the credit of $400, alleged to have been paid Judge
Tredway in 1852.

The following facts may be regarded as incontrovertible in the cause:

First. That at the time of the alleged payment, and from that time up to the present, the bond was in the possession of Terry.

Second. That there were endorsements on the bond of all the previous credits at the time the bond was forwarded to the commissioner, and no endorsement of the alleged payments in August, 1852.

Third. That all the previous endorsements and receipts were made and given by the party who for the time being owned the bond.

Fourth. That Terry, the owner of the bond, did not receive the $400, alleged to have been paid in 1852.

Fifth. That although the parties—Terry, Tredway, and Wooding—lived not far apart, and saw each other frequently at or about the time of the alleged payment, no statement was made to Terry by either of the others that any such payment had been made.

Under such circumstances, it is clear the commissioner ought not to have recognized Tredway's receipt, in the absence of proof that Terry had authorized or sanctioned it. The parties had been careful to endorse all other payments upon the bond; the owner had just transmitted the bond to him, without any endorsement, in favor of the $400. In all the other payments the party owning the bond had made the endorsement.

There are circumstances of departure from the former methods required of the commissioner, that he should demand plenary proof that the pretended agent had due authority.

The burden of proof, that a payment made to another than the owner or holder of the evidence of the debt is a lawful payment, is upon the party who makes such payment. If the debtor makes the payment to a party who does not

have in hand the obligation, he takes the risk of his authority to make the collection.

The appellant, for the purpose of showing such authority, has introduced Judge Tredway as a witness, who is asked whether he was authorized by J. M. Terry to collect the $400 for him, to which he answers as follows:

"I do not recollect anything about the transaction. I have tried to recall it, but cannot. I only know the paper is in my handwriting. From the connection and intimacy between Mr. Terry and myself in business matters, I feel confident I would not have collected the money without authority from Mr. Terry. He was in good circumstances, and I was hard run and had but little credit. Mr. Terry was always liberal in aiding me when I needed it, and I can only say from these circumstances that any transaction of the kind would have been authorized or sanctioned by him."

We do not understand Judge Tredway as saying, or intending to convey the impression, that he, as attorney, was empowered by Terry to collect the money for him. Such a statement would have been, no doubt, at variance with the fact, for Terry himself was at the time a practicing lawyer, living in the same town with Judge Tredway, and in the same county with Wooding, the debtor, and it was quite as easy for Terry himself to collect the money, as it was for Judge Tredway to make the collection.

Besides, had Judge Tredway, as counsel or attorney, been entrusted with the control of the debt, he would have been also entrusted with the custody of the bond, as evidence of his authority.

All that the witness means to say is, that from the intimate relations existing between himself and Terry, from the fact that Terry was then in a prosperous condition, whilst he himself was in straightened circumstances; and from the further fact that Terry was always liberal in aid-

ing him when he needed assistance, he was satisfied he had authority to receive the money, or that it would be sanctioned by Terry.

It is, of course, not intended to impute any thing improper to Judge Tredway. He no doubt honestly believed, from the considerations already mentioned, that Terry would unhesitatingly approve the collection.

But Judge Tredway does not state that he did sanction it. He does not say that Terry was informed of the payment. He does not even give it as his opinion or recollection, that the fact was ever communicated to Terry, and it is a noteworthy fact that the counsel for the appellant did not even attempt to get from the witness any statement from which it might be inferred that Terry had the slightest knowledge of the transaction. Giving to the defendant all the benefits of every reasonable presumption to be derived from the evidence adduced by him, it has fallen far short of proving either the payment to appellee, or authority of the alleged agent to make the collection.

For these reasons I think the decree of the circuit court is correct, and should be affirmed.

DECREE AFFIRMED.