### Richmond.

GILLS v. GILLS AND UNITED STATES FIDELITY AND GUAR-
ANTY COMPANY.

January 22, 1920.

Absent, Kelly, J.

1. EQUITY—*Preliminary or Interlocutory and Final Hearings.*—
There are two kinds of hearings in a court of equity: (1)
Preliminary or interlocutory, and (2) final hearings. At a
preliminary hearing the court decides those questions and
passes upon those matters which are material in determining
the subsequent or further steps to be taken in the cause.
There may be several preliminary hearings in a cause, but
in the very nature of things there can be but one final hear-
ing, at which the cause is absolutely disposed of by the
entry of a final decree upon the merits of the suit.

2. FINAL JUDGMENTS AND DECREES—*Criterion to Determine
Whether Decree Final or Interlocutory.*—A decree is final
when it either refuses or grants the relief sought by the
party complaining, or it is interlocutory when the further
action of the court is necessary to afford the complete re-
lief contemplated by the court.

3. FINAL JUDGMENTS AND DECREES—*Definition of Final Decree.*—
A final decree is defined to be one which disposes of the
whole subject and gives all the relief that was contemplated
by the suit, so that nothing remains to be done in the cause,
or which adjudicates all the matters in controversy between
the parties, although much may remain to be done before
the decree can be carried completely into execution.

4. FINAL JUDGMENTS AND DECREES—*Final in Part, Interlocutory in
Part—Final as to one Party, Not as to Another party.*—
While a decree cannot be in part final and in part interlocu-
tory in the same cause for or against the same parties who
remain in court, in Virginia it has often been decided that
a decree may be final as to one party and not as to another.

5. FINAL JUDGMENTS AND DECREES—*Confirmation of Commis-
sioners Report—Case at Bar.*—A decree confirming a com-
missioner's report is not necessarily final, for the confirma-

tion of a commissioner's report is in itself a preliminary or interlocutory matter, a mere basis for final decretal action.

6. FINAL JUDGMENTS AND DECREES—*Decree Removing Guardian and Confirming Commissioner's Report Stating Guardian's Account—Case at Bar.*—In the instant case a decree was held to be final where it not only confirmed the commissioner's report stating the account of a guardian, but went further and itself disposed of the whole subject in controversy in the cause so far as defendants (appellees) were concerned, and gave against the defendants all the relief that was contemplated by the suit. Nothing remained to be done in the cause in order to obtain such relief. The decree was amply sufficient therefor. All that remained to be done was to carry the decree into execution, and in the instant case no further decree or order of court in the cause was needed even for that purpose.

7. EQUITY—*Rehearing—Bill of Review—Section 3451 of the Code of 1904.*—In a suit for the removal of a guardian and the settlement of his accounts, a final decree can be reheard after the term at which it is entered only upon motion under section 3451 of the Code of 1904, where the decree was on a bill taken for confessed, or on a bill of review. But as the practice in Virginia is liberal, touching mere forms of pleading, the court will regard petitions of a guardian and his surety, praying that such decree be reheard, vacated and set aside, as bills of review.

8. BILL OF REVIEW—*Motion to Rehear under Section 3451 of the Code of 1904—Grounds.*—There are but two classes of grounds on which a final decree in a suit for the removal of a guardian and the settlement of his accounts may be reheard upon a bill of review or a proceeding by motion under section 3451 of the Code of 1904, namely, because of error apparent on the face of the record, or because of newly discovered evidence which could not by the use of due diligence have been discovered or used before the decree was rendered.

9. BILL OF REVIEW—*Motion to Rehear under Section 3451 of the Code of 1904—Grounds.*—The instant case was a bill of review to set aside a final decree removing a guardian and confirming a commissioner's report stating his accounts for the alleged omission of the commissioner to allow the guardian certain items of credit, which items are alleged to have existed prior to the taking and stating of such account, which the guardian neglected to assert in any way before the commissioner or before the court prior to the decree, although the guardian was a party defendant to the suit and had

been brought before the court by personal service of process, and had been personally served with notice of the taking of the account.

*Held:* It being apparent that the right of the guardian to any and all of such claims of credit was dependent upon extrinsic evidence, that the errors alleged in the bill of review as grounds for the rehearing were not errors in law apparent on the face of the decree.

10. BILL OF REVIEW AS ANSWER.—After a final decree in a suit to obtain the removal of a guardian and the settlement of his accounts, the guardian filed a petition: for rehearing (regarded by the court as a bill of review) on the ground that the commissioner in taking his account failed to allow him certain credits dependent upon extrinsic evidence.

*Held:* That the bill of review of the guardian was in truth a belated answer sought to be filed after a final decree, and that this could not be done even under the liberal practice permitted by section 3275 of the Code of 1904.

11. FINAL JUDGMENTS AND DECREES—*Decree Pro Confesso—Reversal or Amendment.*—A final decree removing a guardian and confirming a report of commissioner stating his accounts was entered on a bill taken for confessed, so that section 3451 of the Code of 1904 was applicable thereto, such statute authorized the court below to set it aside only for error for which the Supreme Court of Appeals on appeal might reverse it, or to amend it only to the extent that data might appear in the record for safely correcting it. But the Supreme Court of Appeals cannot on appeal reverse a decree for extrinsic matter which does not appear in the record prior to or at the time of the entry of the decree, where such matter is not claimed to have been after-discovered evidence. Hence neither the court below nor the Supreme Court of Appeals is given any statutory authority to reverse or amend such decree.

12. FINAL JUDGMENTS AND DECREES—*Bill of Review—Grounds for Rehearing.*—In Virginia, as elsewhere, the general rule that a final decree cannot be reheard except upon the two grounds of (1) error apparent on the face of the record, or (2) after-discovered evidence, has not been modified.

13. BILL OF REVIEW—*Guardian and Surety—Notice of Taking of Account.*—A final decree having been entered against a guardian and his surety, removing the guardian and confirming the report of a commissioner stating the guardian's account and requiring the guardian to pay over the amounts found due, and the commissioner's report not having been excepted to prior to the decree by the surety, a party de-

fendant personally before the court, the surety could not bring the cause again before the court by bill of review, on the ground that it had no notice of the taking of the account.

14. BILL OF REVIEW—*Notice of Taking of Account.*—Want of notice of the time and place of a commissioner taking an account is not sufficient reason for a bill of review or petition for rehearing, such objection not having been taken, as it ought to have been before the decree was rendered.

15. PROCESS—*Service of Process—Notice of Subsequent Proceedings—Notice of Taking of Account.*—Notice to parties that they have been sued and to bring them before the court stands upon a very different footing from notice of the time and place of taking an account ordered by the court in a pending cause. The parties, having been sued and served with process bringing them before the court, are presumed to know the subsequent proceedings in the suit which are taken in court.

16. BILL OF REVIEW—*Guardian's Accounts—Failure to adopt Rest Day.*—It is not ground for a bill of review by the surety of a guardian for error on the face of the record that a commissioner's report, confirmed by final decree stating the accounts of the guardian, failed to adopt one rest day and mixed principal and interest, where the account as stated was more favorable to the guardian, and hence more favorable also to the surety, than if it had been correctly stated.

17. ACCOUNTS AND ACCOUNTING—*Interest—Compound Interest.*—In accordance with the law governing the settlement of guardianship accounts on each annual rest day and on the date the guardianship ceases, all undisbursed interest with which the guardian is chargeable is transferred to the principal column of the account, and the balance in his hands thus ascertained is treated as being principal, and interest-bearing from such times, and to that extent a guardian is chargeable with compound interest. Section 2606 of the Code of 1904.

18. ACCOUNTS AND ACCOUNTING—*Interest—Compound Interest.*—From the last day of the guardianship account, therefore, the guardian is chargeable with interest on the balance in his hands, both of principal and interest, as of such date. But in stating the account of a guardian after the termination of the wardship there should be no subsequent rest day, or bringing of interest into the principal column, again compounding the interest. The balance found in the guardian's hands at the termination of the wardship, interest as well as principal, being all treated as principal, bears interest

67

from that date, but none of the interest accruing after such date bears any interest; the account being stated after that date "on the ordinary principles of debtor and creditor as to interest."

Appeal from a decree of the Circuit Court of Campbell county. Decree for defendants. Complainants appeal.

*Reversed and remanded.*

This suit was instituted in the summer of 1915 by the appellants, three infant children of John B. Gills, deceased, of the ages of eight, seven and five years, respectively, by their mother, Mary E. Gills, as their next friend.

The father of the infants was killed in a dynamite explosion in West Virginia, on May 12, 1911, where he was then at work as a partner in a firm of railroad contractors. His wife, the said mother, and the infant children were living with him at such place of work at the time. The wife was a native of West Virginia and had relatives in that State. The decedent was a native of Virginia and was a son of John W. Gills, whose home was in the latter State.

The decedent had accumulated in his lifetime an estate of personalty aggregating some $8,000. Upon his death his body was brought to the home of his father in Virginia for burial, the widow and the children accompanying the body to the home of the father of deceased.

The decedent died intestate. There was a qualification upon his estate, and pending the distribution of the estate by the administrator and the building of a dwelling house on a lot which the widow purchased near the home of the said John W. Gills, the widow and children remained in the home of John W. Gills from May 13 to July 20, 1911. They left such home on July 20, 1911, and went on a visit to relaties of the widow in West Virginia until October 8, 1911, when they returned to the home of John W. Gills and re-

mained there until April 8, 1912, when the dwelling of the widow aforesaid being completed she with the children went there to live and lived at that place thereafter.

There was no qualification of any guardian for said infants until after the date last mentioned. About a month thereafter, to-wit, on May 12, 1912, the said John W. Gills, qualified as such guardian, with the United States Fidelity and Guaranty Company, one of the appellees, as surety on the guardianship bond, which was in the penalty of $7,000.

The said mother consented to such qualification and at his earnest request and solicitation, and upon the express promise on his part that he would charge no commission or other compensation for his services, wrote the court nominating such guardian and moved the court to make such appointment.

On June 4, 1913, the said guardian collected of the administrator of the deceased father of said infants, $4,-415.98, and on August 19, 1913, collected from such administrator $26.13, the residue of the shares of such infants in the net balance of the personal estate of such decedent, making a total of $4,642.11, estate of the infants which came into the hands of such guardian.

After the receipt of said estate the guardian in 1913 paid for the support and maintenance of said infants only the aggregate of $55.00, in three payments, to the mother; in 1914 only the aggregate of $80.00, in five payments, to same; and in 1915, prior to the time the suit was brought, only the aggregate of $40.00, in two payments, to same; altogether aggregating only the sum of $175 thus paid from the income from said $4,642.11 of estate, for the support and maintenance of the infants for a period of over two years.

Such payments to the mother were insufficient for the support and maintenance of the infants and she had to use for that purpose and her own support all that was left to

her of her own distributive share of said estate after buying said lot and building said dwelling, being some $600, but nothing more could be gotten from the guardian for the support and maintenance of the infants prior to the institution of the suit.

On June 26, 1915, the guardian paid to the mother $10 and on July 26, 1915, $25, making up the aggregate of $210 paid her by him for the purposes aforesaid in 1913, 1914 and 1915.

The guardian settled no account of his transaction prior to the institution of the suit, although after the expiration of a year from his qualification he was frequently requested to do so by the commissioner of accounts at the instance of the said mother and at the instance of said surety on the guardianship bond, and he at no time gave any reasonable excuse for such default.

The objects of the suit, in so far as the appellees, the said guardian and surety company, are concerned, were, as disclosed by the bill, to obtain the following relief:

(a) A settlement of the accounts of the guardian before a commissioner of court in which no commissions should be allowed him for two reasons alleged in the bill—first, because of the agreement aforesaid of the guardian not to charge any commissions, and, secondly, because he had forfeited all commissions by his failure to settle his accounts as required by law.

(b) The payment by the guardian of certain sums by direction of the court for the support and maintenance of the infants pending the suit and to reimburse the mother for sums already paid out by her for that purpose.

(c) The removal of the guardian.

(d) A judgment by decree of court requiring the guardian and the surety aforesaid to pay over to the successor of such guardian all sums due by the latter.

Both the guardian and surety company were made by

the bill parties defendant to the suit and were personally served with process and thus brought before the court as such parties. Neither of them made any defense until the petitions hereinafter mentioned were filed. The bill was regularly taken for confessed as to both such defendants; and at the September term, 1915, a decree was entered directing the guardian to forthwith pay to said mother the sum of $100 on account of the support and maintenance of the infants and thereafter the sum of $25 per month on the first day of each and every month to the mother for the same purposes; and it was further ordered that the guardian settle an account of his transactions before a commissioner named, who was appointed for the purpose, and such commissioner was directed to examine, state and settle such account and report the same to the court, along with any other accounts, reports or matters deemed pertinent by him.

On October 6, 1915, the commissioner appointed for the purpose, as aforesaid, proceeded to execute said decree of reference. With respect to notice of such proceeding the commissioner states in his report that "in pursuance of the annexed notice of the time and place for taking said accounts, he proceeded to execute said decree." And in a succeeding paragraph of the report he says: "Your commissioner had an extract of said decree served on said John W. Gills, which required him to make settlement of his account as guardian before your commissioner, but he failed to appear or make any settlement whatever." The commissioner returned annexed to his report two copies of notices of the proceeding before him, both in the following form: There was the title of the cause set out as "Mary E. Gills and others by and etc. vs. John W. Gills and the United States Fidelity and Guaranty Co., a corporation," followed by an extract from said decree of so much of it as directed the settlement of said accounts and appointed

said commissioner for the purpose, at the foot of which extract was the address, "To John W. Gills and other above named parties," followed by the usual form of commissioner's notice in such case. There is no return or other endorsement on the two notices showing any service or acknowledgment of service of them.

Neither the guardian nor surety appeared before the commissioner.

The commissioner took the deposition of said widow and mother and filed his report in which he stated an account of the transactions of the guardian. To this report there was no exception.

In the statement of this account no fixed annual rest day is taken. The account is stated with four different rest days, to-wit, January 1, 1914, October 2, 1914, and July 26, 1915, and November 1, 1915, the date the wardship terminated, as of which dates the interest with which the guardian is charged for the preceding periods (beginning with interest on the $4,615.98, the first receipts of the guardian, from 30 days after such sum came into his hands) is brought into the principal column, the aggregates of disbursements made by him during such preceding periods, respectively, are deducted and the interest computed on the respective balances to the next succeeding rest day, thus compounding the interest from such rest days prior to November 1, 1915, and bringing down the balance in the hands of the guardian of principal and interest as of the last named date. No credit is allowed the guardian in such statement of account except for the payments to the mother aforesaid, which aggregated $210, as aforesaid, and were less than the interest with which the guardian was charged as of each of said rest days. The aggregate of interest with which the guardian is charged in his account is $632.64. The disbursements aforesaid of $210 being deducted from this left $422.64 (but stated in the account

to be $422.58), balance of interest, and the $4,642.11 of the principal received by him as aforesaid, or $5,064.75 (but stated in the account as $5,064.69), as the total amount of principal and interest found in the hands of the guardian as of November 1, 1915, to which date the balance due by the guardian is brought down as aforesaid, of which one-third, or $1,688.23, belonged to each of said infants.

Had this same account been stated with May 12 or June 4 as the rest day, and had been otherwise stated strictly according to law in the usual method of statement of a guardianship account, the result would have been that a somewhat greater amount would have been found to have been in the hands of the guardian as of November 1, 1915, the date of the termination of the wardship, than the $5,064.69 as shown by such account as it was reported —the report making in such balance a difference in favor of the guardian as compared with the results of correct statements of the same account with either of such annual rest days.

Thereupon the following decree was entered:

*Decree, November Term, 1915.*

"This cause which was regularly matured at rules on process duly and legally served, came on this day to be heard on the bill of complaints taken for confessed, the exhibits filed with said bill, and the report of Commissioner F. W. Whitaker, which said report has been returned and filed herein for more than ten days, and to which are no exceptions, and was argued by counsel.

"On consideration whereof, there being no exception to said report it is adjudged, ordered and decreed that the same be approved and confirmed in all particulars.

"And it further appearing to the court that the plaintiffs are entitled to the relief prayed and that the said John W.

·Gills has not faithfully dischaged his duties as guardian of the plaintiffs, Mary E. Gills, Robert Gills and Gladys Gills, it is adjudged, ordered and decreed that the appointment of said John W. Gills as guardian of the said Mary E. Gills, Robert Gills and Gladys Gills be and the same is hereby ·revoked and annulled and said John W. Gills is hereby removed from the position of guardian of said Mary E. Gills, Robert Gills and Gladys Gills, and his powers as guardian of said infants are hereby revoked and annulled.

"And it appearing to the court that each of the complainants is entitled to recover of the defendants the sum of one thousand six hundred and eighty-eight dollars and twenty-three cents ($1,688.23), with interest thereon from November 1, 1915, until paid, such sum being one-third of five thousand and sixty-four dollars and sixty-nine cents ($5,064.69), the total guardianship fund for which said defendants are liable, it is adjudged, ordered and decreed that the plaintiff, Mary E. Gills, recover of the defendants, John W. Gills and the United States Fidelity and Guaranty Company the sum of $1,688.23, with interest thereon from November 1, 1915, until paid and her costs in this behalf expended; that the complainant, Robert Gills, recover of the defendants, John W. Gills and the United States Fidelity and Guaranty Company, the sum of $1,688.23, with interest thereon from November 1, 1915, until paid, and his costs in this behalf expended, and that the complainant, Gladys Gills, recover of the defendants, John W. Gills and the United States Fidelity and Guaranty Company, the sum of $1,688.23, with interest thereon from November 1, 1915, until paid, and her costs in this behalf expended, and judgment is hereby awarded against the said defendants accordingly.

"It is further adjudged, ordered and decreed that H. C. Featherston be and he hereby is appointed receiver of the fund involved in this cause, and said receiver shall forth-

with proceed, by execution or otherwise as he shall deem best, to collect from the defendants the sum for which judgment is hereinbefore awarded; but before acting hereunder said receiver shall enter into bond before the clerk of this court with surety approved by said clerk in the penalty of fifty-two hundred ($5,200.00) dollars, conditioned upon the faithful performance of his duty under this decree and all future decrees and orders in this cause.

"And said receiver shall report to court his proceedings hereunder."

Execution was sued out on the judgment entered by such decree and was levied on certain personal property of the guardian.

At the January term, 1916, the said guardian and surety asked leave to file their separate petitions in which they prayed that the said decree of November term, 1915, be reheard, vacated and set aside, and that the cause be referred to a commissioner with directions to restate and resettle, and make a proper statement of the accounts of the guardian, etc.

Neither of these petitions alleges any newly discovered matter as ground for the rehearing of said decree.

The petition of the guardian, so far as need be stated, prays for a rehearing of said decree on the ground that he was not given credit in the said commissioner's report for certain disbursements as guardian, among which may be mentioned here the yearly premiums on his guardianship bond, certain taxes and a clerk's fee on his qualification, aggregating $183.17, and on the ground that he was not given credit for any commissions on his receipts as guardian, nor for the board and clothing of the infants during the period they were in his home prior to his qualification as guardian, which period was alleged in the petition as being eleven months, but which was shown by the proof subsequently taken in the cause to have been only about

eight months as aforesaid. There were other claims of credit asserted in the petition, for supplies furnished to the mother and work done for the benefit of the infants and for their support and maintenance, which need not be here specifically mentioned.

The petition of the guardian also set out that there were then loaned out $2,800 of the said fund, on good real estate security, for which he asked to have credit on the execution issued against him under said decree of November term, 1915.

All of the claims of credit asserted in such petition could have been made by the petitioner before the court or the commissioner prior to said decree of November term, 1915, just as well as later. The petition sets forth no reason for the delay in the assertion of such claims except that he says in the petition that he "concedes that he was negligent in failing to file an answer in said cause and in failing to appear before the commissioner in reference to said account, but the said Alice May Gills was petitioner's daughter-in-law, lived next to him, and being at his house practically every day; the infants are his grandchildren, he is well acquainted with both the commissioner and attorney conducting the cause, and that he did not suppose that any action would be taken in reference to it, without it being specifically called to his attention, he having overlooked the matter on the day appointed by the commissioner's notice."

The petition of the surety, so far as need be stated here, prays for a rehearing of said decree on the grounds which are stated in the petition as follows:

1. Because such petitioner "had no notice of the taking of said account and no opportunity to appear before the commissioner and protect its interests; naturally petitioner expected the said John W. Gills to have attended before said commission, to have rendered his accounts, and to have

reduced the amounts due by him all possible. But even in that event petitioner was entitled to have been present, by some representation, to see that the said accounts were properly settled and the balance which it is asked in the bill that petitioner shall be held liable was accurately and properly ascertained."

2. Because "said account is made up upon an improper basis, in that it does not contain the annual rests and mixes principal and interest all together, but the main and substantial objection to the said account is that it absolutely fails to give to the said Gills credits to which he is entitled and which will largely reduce the sum due by him, said credits including not only sums furnished by him for the maintenance and support of his wards, but at least the sum of $2,800.00 which he had invested as was his duty to do and which is fully and amply secured."

By decree entered at the January term, 1916, the said petitions, over the objections of appellants, were allowed to be filed as petitions for rehearing of the said decree of November term, 1915—the petition of the guardian being also treated as his answer to the bill.

The appellants thereupon demurred to such petitions as being in truth bills of review, etc., and also moved the court to dismiss them.

Of the further proceedings in the cause in the court below it is sufficient here to say that by decree of the January term, 1917, as set forth in the decree, "the demurrer to said bills of review, or petitions for rehearing" were overruled, and "the motion of the plaintiffs for the dismissal of said bills of review or petitions for rehearing" were "denied and dismissed;" and the cause was referred back to the same commissioner who made the former report aforesaid to "take, state and report to the court an account of the transactions of John W. Gills as guardian of the infant complainants, together with any other matters deemed by him pertinent."

The commissioner accordingly proceeded on May 29, 1917, to execute the last named decree of reference. He took and filed with his report the depositions of a number of witnesses including the depositions of the said guardian and of the mother of the said infants and of. others. The report filed by him allowed the guardian credit for the same $210 of items of disbursement aforesaid allowed in the former report. The only new items of disbursement allowed as credits to the guardian were the items of yearly premiums on guardianship bond, certain taxes and the clerk's fee on qualification paid by the guardian, aggregating the aforesaid sum of $183.17, and $240 for board and clothing furnished the infants for the eight months while they were inmates of the home of the guardian prior to his qualification as such, as aforesaid. And the aforesaid loans of $2,800 of the fund were allowed as a credit to the guardian as being amply secured and safe. The other claims of credit aforesaid were disallowed by the commissioner.

The appellants duly excepted to such second report because of its allowance of the new items of credit aforesaid, as did the appellee surety company also for its disallowance of the further items of credit claimed by the guardian as aforesaid.

By decree entered at the November term, 1917, all of the exceptions aforesaid were overruled and the second report aforesaid was in all respects confirmed.

*H. C. Featherston,* for the appellants.

*Caskie & Caskie* and *Frank Nelson,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

There are many questions raised by the assignments and cross-assignments of error which, in the view we take of the case, we find unnecessary to consider. Those questions which, in view of the conclusions we have reached thereon, dispose of the case will be passed upon in their order as stated below.

1. Was the decree of November term, 1915, which appears in the statement preceding this opinion, an interlocutory or a final decree?

[1-4] As laid down in that excellent work, Hogg's Equity Procedure, Vol. 1, section 556, "There are two kinds of hearings in a court of equity: (1) Preliminary or interlocutory, and (2) final hearings. At a preliminary hearing the court decides those questions and passes upon those matters which are material in determining the subsequent or further steps to be taken in the cause * * * There may be several preliminary hearings in a cause, but in the very nature of things, there can be but one final hearing, at which the cause is absolutely disposed of by the entry of a final decree upon the merits of the suit." Again, *Idem,* sec. 567: "* * * probably no better" (criterion) "can be found" (of when a decree is final and when interlocutory) "than that given by Baldwin, J., in *Cocke* v. *Gilpin,* 1 Rob. (40 Va.) 20, 26-27, in which it is said that 'a decree is final when it either refuses or grants the relief sought by the party complaining;' or it is interlocutory 'when the further action of the court is necessary to afford the complete relief contemplated by the court.'" Again, *Idem,* section 209: "A final decree is defined to be one which disposes of the whole subject and gives all the relief that was contemplated by the suit, so that nothing remains to be done in the cause, or which adjudicates all the matters in controversy between the parties, although much may remain to be done before the decree can be carried completely into execution." Again, *Idem,* section 569: "While

a decree cannot be in part final, and in part interlocutory, in the same cause, for or against the same parties who remain in court, in Virginia it has often been decided that a decree may be final as to one party and not as to another."

The above statements of the law are sustained by numerous Virginia decisions which are cited by the learned author to support them. See also to same effect, *Johnson* V. *Merritt,* 125 Va. 162, 99 S. E. 785.

[5, 6] It is true that the application of the general principles thus laid down to particular decrees is not always free from difficulty; but we encounter no difficulty whatever in reaching the conclusion that upon the application of such principles to the decree in question it must be regarded as a final decree. It is such a decree not because it confirms the commissioner's report therein mentioned, for the confirmation of a commissioner's report is in itself a preliminary or interlocutory matter, a mere basis for final decretal action. If such final decretal action had been postponed to some other time the decree would not have been final although it confirmed the commissioner's report. But the decree under consideration not only confirmed the report and thus established the basis for a final decree, but it went further and itself thereupon disposed "of the whole subject" in controversy in the cause so far as the appellees were concerned and gave against the appellees "all the relief that was contemplated by the suit," as clearly appears from a comparison of the decree with the objects of the suit —the relief thereby sought against appellees—set forth in the statement preceding this opinion. "Nothing remained to be done in the cause" in order to obtain such relief. The decree was amply sufficient therefor. All that remained to be done was to carry the decree into execution and in the case before us no further decree or order of court in the cause was needed even for that purpose. The decree was therefore unquestionably a final decree.

[7] 2. Should the petitions filed in the cause by the appellees, as set forth in the statement preceding this opinion, be regarded as petitions for rehearing or as bills of review?

It is well settled that if a rehearing of the final decree of November term, 1915, could have been properly granted upon such petitions, it must have been on regarding the petitions as bills of review, since in a suit of the character of that before us a final decree can be reheard after the terms at which it is entered only upon motion under section 3451 of the Code, where the decree as in this case was on a bill taken for confessed (which procedure was not followed), or upon a bill of review. Our practice is rightly liberal as touching mere forms of pleading, however, and we have no difficulty in regarding the petitions as bills of review.

3. Are the errors alleged in the bill of review of the appellee guardian as grounds for the rehearing of said decree errors in law apparent on the face of such decree— that is, are they errors in law that appear upon the face of the proceedings when the whole record is read along with such decree?

[8] We state this question thus as it is settled, and, of course, well understood, that there are but two classes of grounds on which a final decree in a suit such as that before us may be reheard upon a bill of review (and the same is true of a proceeding by motion under section 3451 of the Code), and they are (1) because of error apparent on the face of the record (Hogg's Eq. Proc., sec. 211); or (2) because of newly discovered evidence which could not by the use of due diligence have been discovered or used before the decree was rendered. (1 Barton's Chy. Pr., p. 332; 1 Hogg's Eq. Proc., sec. 208; 2 Pollard's Code, sec. 3451, and cases cited). And, as appears from the statement preceding this opinion, the bills of review of the ap-

pellees do not seek a rehearing of said decree on the second ground just mentioned.

[9] As appears from the statement preceding this opinion, the errors alleged in the bill of review of the guardian all consist merely of the alleged omission of the commissioner taking and stating the account of the transactions of the guardian to allow the latter certain items of credit, which items are alleged to have existed prior to the taking and stating of such account, which the guardian neglected to assert in any way before the commissioner or before the court prior to said decree of November term, 1915, although the guardian was a party defendant to the suit and had been brought before the court as such by personal service of process and had in addition been personally served with notice of the taking of said account by the commissioner and with an extract of that portion of the decree which required him to settle his accounts before the Commissioner. And it is apparent that the right of the guardian to any and all of such claims of credit is dependent upon extrinsic evidence. Even his claim to commissions was, as a matter of law, dependent upon his being able to give a reasonable excuse for his failure to settle his accounts as required by law. 2 Pollard's Code, 1904, sec. 2679, and cases cited. And in view of the allegations of the bill and that it was taken for confessed, as the record stood at the time of the taking of said account and the entry of the decree under consideration, the fact that such excuse did not exist was concluded against the guardian. And there being no extrinsic evidence before the commissioner to show that the disbursements had been in fact made which constituted the other alleged omitted credits, or that, if made, they constituted proper charges against the estate of the infants, it is plain that none of the errors alleged in the bill of review of the guardian constituted error in law apparent on the face of the decree.

We can perceive no reason why the final decree aforesaid was not conclusive against the guardian. He was given his day in court to make all the defenses he had. He made none until after such decree had been entered and the term of court at which such decree was pronounced had ended. It is apparent from the record that his claim to commissions and for board and clothing of the infants and the other claims of credit aforesaid other than for the clerk's fee and taxes, were after-thoughts—were charges which the guardian did not intend to make at the time such services were rendered and disbursements were made which were rendered or made by him.

[10-11] The bill of review of the guardian is in truth a belated answer sought to be filed after a final decree. That cannot be done even under the liberal practice permitted by our statute (sec. 3275 of the Code) on the subject. A contrary rule, which would permit causes to be reopened after final decree, by the injection therein of new and previously unthought of claims, or even of other claims originally just and which might have been maintained if earlier presented, but which through neglect of the claimant were not brought forward at the proper time, would be far-reaching in its evil results. Such procedure, unless authorized by statute, cannot be approved by us. There is no such statute. Although the decree under consideration was entered on a bill taken for confessed so that section 3451 of the Code is applicable thereto, such statute authorized the court below to set it aside only for error for which this court, on appeal, might reverse it, or to amend it only to the extent that data might appear in the record for safely correcting it. *Shipman* v. *Fletcher*, 91 Va. 473, 22 S. E. 458. This court cannot on appeal reverse a decree for extrinsic matter which does not appear in the record prior to or at the time of the entry of the decree, where such matter is not claimed to have been after-discovered

69

evidence. And at such time no data appears as having been in the record in the case before us by which the decree in question, if erroneous, could have been safely amended. Hence neither the court below nor this court is given any statutory authority to reverse or amend such decree. Courts are provided for the purpose of putting an end, and a speedy end, to controversies, and not as a forum for endless litigation. Without valid excuse no party who has had his day in court can reopen the hearing after final decision of extrinsic matters in controversy between the same parties on the mere ground that he wishes to interpose other defenses which he neglected to interpose before such decision was made. It is seldom that such defenses have any real merit, and where it chances that they have any validity, it is better that they should be lost by the negligent litigant than that the vitally important rule that there must be an end of litigation should be set at naught.

4. But it is argued for appellees, under the authority of *Nelson's Adm'r* v. *Kownslar's Ex'r, etc.*, 79 Va. 468; *Wooding* v. *Bradley*, 76 Va. 614; *Newberry* v. *Stuart*, 86 Va. 976, 11 S. E. 880; *Daily's Ex'r* v. *Warren*, 80 Va. 512, and *Kendrick* v. *Whitney*, 28 Gratt. (69 Va.) 646, that in Virginia at least the general rule, that a final decree cannot be reheard except upon the two grounds above mentioned (of error apparent on the face of the record or of after-discovered evidence), has been modified; and they invoke the following statement in the opinion of Judge Staples in *Wooding* v. *Bradley, supra*, 76 Va. 614, as applicable to final as well as to interlocutory decrees, because, as it is argued, the court in the last named case, and in all of the cases cited in the present paragraph, was dealing with final decrees. We shall now consider the question thus raised.

The statement in the opinion of Judge Staples, men-

tioned, is as follows: "There is no rule of law or practice which forbids a court, so long as it retains a cause under its consideration, from receiving and entertaining an exception to a commissioner's report, even after the same has been confirmed, if it be clearly shown that the report, if carried out, would be productive of injustice and wrong." (See p. 616 of the opinion.)

An examination of the authorities referred to discloses the following:

*Wooding* v. *Bradley* was a creditor's suit having for its object the sale of the land of a decedent debtor's estate to satisfy the debts. The decree in question (of October, 1874) confirmed the commissioner's report of the Terry debt, among other debts, and appointed commissioners to sell the land to pay the debts reported. This manifestly was not a final but an interlocutory decree confirming a commissioner's report. Such a decree is appealable under the statute in Virginia because it is one "adjudicating the principles of a cause" (sec. 3454 of the Code), but it is nevertheless but an interlocutory decree, and the same court which entered it has the power to rehear and to correct any error in it at any time before final decree and thus remove the cause for appeal. 1 Hogg's Eq. Proc. sec. 568. A decree of sale is not a final but an interlocutory decree. *Dellinger* v. *Foltz*, 93 Va. at p. 733, 25 S. E. 998, and cases cited. It is true that in August, 1876, and January, 1877, Terry was paid the amount of his debt as reported by said commissioner's report. But when the decree in question was asked to be reheard there were funds which arose from the sale of the land still in the hands of a commissioner of sale and under the control of the court of sufficient amount to pay the balance which was in fact still justly due and unpaid on the Terry debt. The payment and satisfaction of the whole of such debt was a part of the relief that was contemplated by and was one of the objects

of the suit. In the ·very opinion of Judge Staples, from which the quotation above is taken, it is said: "That no final decree had been rendered 'at the time the petition was presented, is too clear to admit of discussion."

*Nelson's Adm'r* v. *Kownslar's Executrix,* 79 Va. 468, was also a creditor's suit for the sale of land of a deceased debtor's estate to satisfy the debts. The decree which the court said was open to attack by petition to rehear (the decree of March, 1875), merely confirmed a commissioner's report which ascertained the commuted value of and allowed the widow a certain credit for her dower in so much of the land as had been sold and had been purchased by her, and appointed commissioners to assign dower in kind in so much of the land as had not been sold, and allowed the widow to then elect to claim dower. Manifestly this was in truth merely an interlocutory decree, as the court expressly held it to be.

*Newberry* v. *Stewart,* 86 Va. 967, 11 S. E. 880, was a suit to enforce a contract for the sale of land. The ascertainment of the balance of purchase money which was unpaid was a matter purely preliminary to a final decree. The Holbrook report in question contained a statement of the amount of certain debts which the purchaser claimed to have paid and to be entitled to set up as credits on his purchase money obligation. The decree in question confirmed that report. But that report itself purported to be only "a partial report," and there were other proceedings which the court in its opinion said indicated that it was subsequently so regarded and not as even a determination at that time of that matter, and the court held that the decree in question was merely an interlocutory decree confirming a commissioner's report. The court said, in part, on this subject: "* * * it is well settled that whether an interlocutory decree confirming a commissioner's report shall be modified or wholly set aside, or not, is generally a matter

resting in the sound discretion of the chancellor, to be exercised according to the particular circumstances of each case. *Kendrick* v. *Whitney*, 28 Gratt. (69 Va.) 646; *Fultz* v. *Brightwell*, 77 Va. 742; 1 Bart. Chy. Pr. 339. * * * Here there was no absolute adjudication of the appellee's claims until" (the subsequent decree which modified the decree above mentioned by allowing a larger credit to the purchaser).

*Daily's Executors* v. *Warren*, 80 Va. 512, was a creditor's suit for the sale of lands of a deceased debtor to satisfy the debts. The decree in question involved merely a controversy between certain parties claiming as assignees of a part of one of the lien debts reported in the cause. The fund from the sale of the land was under the control of the court at the time such decree was entered, the lien of the debts being treated as transferred from the land to the fund. The assignor was not a party to the cause at the time the decree was entered on the petition of one of the rival claimants, nor was the other rival claimant then a party to the cause so far as appears from the report of the case. Later the assignor and such other rival claimant filed their petition asking that the decree aforesaid be set aside in favor of the latter as holding under a prior assignment, which was done. Manifestly there was no binding adjudication of the rights of the claimant under the prior assignment made by the decree drawn in question. Moreover, it was plainly merely an interlocutory decree so long as the fund still remained under the control of the court, as the court held.

*Kendrick* v. *Whitney*, 28 Gratt. (69 Va.) 646, the remaining authority relied on by appellees, as aforesaid, was a judgment creditor's suit for the sale of land of the judgment debtor to satisfy the lien of the judgments. The decree in question merely provided that the plaintiffs recover of the judgment debtor the amount of their judgments;

that a certain time be given the debtor to pay the same, and that in default thereof a commissioner, who was appointed for the purpose, should sell the land or so much thereof as might be necessary to satisfy the judgments, on a credit of six, twelve and eighteen months. And the commissioner was directed to report his proceedings to the court. The court held that the decree was erroneous because it decreed the sale of the land before taking an account of the liens thereon and settling priorities of the different creditors; but that the decree was an interlocutory and not a final decree and could be reheard at any time by the court which entered it prior to a final decree. Plainly such was the character of that decree.

[12] Our conclusion, therefore, upon the question under consideration is that in Virginia, as elsewhere, the general rule that a final decree cannot be reheard except upon the two grounds of (1) error apparent on the face of the record, or (2) after-discovered evidence, has not been modified; and that such rule is applicable to the decree in question of November term, 1915, in so far as the guardian appellee is concerned, and that such decree was final and conclusively binding upon him.

We come now to the consideration of the questions raised by the bill of review filed by the appellee surety company as set forth in the statement preceding this opinion.

What is said above disposes of all of the questions thus raised except two, which will be disposed of in their order as stated below.

[13] 5. The commissioner's report not having been excepted to prior to the decree aforesaid of November term, 1915, by the surety company, a party defendant personally before the court, could the surety company bring the cause again before the court by bill of review, on the ground that it had no notice of the taking of the account?

This question must be answered in the negative.

The facts appearing from the record with respect to the commissioner's notice appear from the statement preceding this opinion. The notice was expressly addressed to the surety company, as well as to all of the other parties to the suit. The report is that the commissioner proceeded to execute the decree of reference "in pursuance of the annexed notice of the time and place for taking said accounts." While not expressly so stated, the inference is that the commissioner reports that he gave notice to all of the parties, including the surety company, before proceeding to execute the decree of reference. The express statement in the report, with respect to the guardian, is not an express statement that notice was served on him of the time and place of taking the account, but that the commissioner "had an extract of said decree served on (him) which required him to make settlement of his accounts as guardian," etc., "but he failed to appear."

However, if it were otherwise and the commissioner's report were considered as showing on its face that no notice was given the surety company of the proceedings before the commissioner, that, in our opinion, would not alter the case.

In *White* v. *Johnson,* 2 Munf. (16 Va.) 285, the report of the commissioners was silent as to notice, the cause was regularly heard on the report, to which there was no exception, and the decree in question was entered confirming the report and dismissing the bill. The decree was objected to on appeal for errors alleged as apparent on the face of the report, consisting of failure to charge certain interest and for its failure to show that notice of the proceedings before the commissioners was given to the plaintiffs. Counsel for defendants took the position as to the notice that there could be no different rule "as to reports of commissioners from that which prevails with respect to depositions. If the exception to a deposition for want of notice

be not taken before the hearing, it may be read." The following is the reported opinion of this court delivered by Judge Roane: "This court, while it is not disposed to deny that reports, which are erroneous upon the face of them, may be objected to at the hearing or expected to in the appellate court, although the same were not specially excepted to by the parties prior to the decree made in the cause, is, on the other hand, of opinion that without such exceptions, reports shall not be impeached on grounds, or in relation to subjects, which may be affected by extraneous testimony; of which nature is the report in this cause, so far as relates to interest claimed against the appellant; and that the report, on which the decree of the county court is founded, not being objected to, is conclusive between the parties."

In *Winston* v. *Johnson,* 2 Munf. (16 Va.) 305, the report of the commissioner merely stated, concerning the time of the execution of the decree of reference, that he "appointed that day for the defendants to render the account," and that they "failing to attend" he proceeded, etc. Counsel for the defendants admitted that "want of notice is an extrinsic objection, but" (claimed that it was) "sufficiently established by Winston's affidavit to the truth of the bill of review." Counsel for plaintiff took the position that the phrases of the report above quoted "sufficiently imply" that the defendants "must have had notice. And, if they had not, they should have made the objections before the decree was rendered * * *" The opinion of this court, *per curiam,* so far as material, is as follows: "The court is * * * of opinion that * * * the allegations of the appellant that the report of the commissioner was made without due notice to him of the time and place of taking the same * * * are (not) of a character to justify a bill of review."

[14] See also *Shenandoah Bank* v. *Shirley,* 26 W. Va. at p. 569, for the holding that, "Want of notice of the time and place of a commissioner's taking an account is not suf-

ficient reason for a bill of review or petition for rehearing; such objection not having been taken, as it ought to have been, before a decree was rendered." To the same effect, see *Livesay* v. *Feamster,* 21 W. Va. at p. 100.

[15] And on principle, as pointed out in *Martin* v. *Salem Land Co.,* 94 Va. at p. 40, 26 S. E. 591, notice to parties that they have been sued and to bring them before the court stands upon a very different footing from notice of the time and place of taking an account ordered by the court in a pending cause. The parties having been sued and served with process bringing them before the court are presumed to know the subsequent proceedings in the suit which are taken in court. *Idem,* and Morrison's Notes on Eq. Proc., p. 110. In the instant case the surety company is presumed to have known of the decree of reference, and when the cause came on to be heard upon the first report of the commissioner aforesaid the surety company must be regarded as having been before the court and if.it had any objection to the report on the ground of lack of notice of the time and place of the taking of the account, it had then, and indeed all during the remainder of that term of court, its day in court to make objection to the report on that ground. Failing to make such objection until after the final decree was entered and the court had adjourned, the objection asserted for the first time by its bill of review came too late.

[16] 6. Does the manner in which the account of the guardian was stated in the commissioner's report which was confirmed by the final decree aforesaid, in its lack of adoption of one rest day and its mixture of principal and interest, of which complaint is made in the bill of review of the surety company, constitute error on the face of the record for which such bill of review would lie?

As appears from the statement preceding this opinion, the account, as stated in the commissioners report, was

more favorable to the guardian and hence more favorable also to the surety than if it had been correctly stated. Hence, there was no error in this of which the surety company could complain, and the question last stated must be answered in the negative.

There remains but one question for our consideration, and that is this:

7. Was it error in the court below to decree that the guardian should pay interest from November 1, 1915—the date on which he was removed as guardian—on the balance in his hands as of that date, since such balance consisted of interest as well as principal, and the effect of the decree was to require him to pay interest from such time on such interest, as well as on the principal sum in his hands as of such date?

[17, 18] We are of opinion that there was no error in the decree in this particular. In accordance with the law governing the settlement of guardianship accounts, on each annual rest day and on the date the guardianship ceases, all undisbursed interest with which the guardian is chargeable is transferred to the principal column of the account, and the balance in his hands thus ascertained is treated as being principal, and interest-bearing from such times, and to that extent a guardian is chargeable with compound interest. Sec. 2606 of the Code. From the last day of the guardianship account, therefore, the guardian is chargeable with interest on the balance in his hands, both of principal and interest, as of such date. But in stating the account of a guardian after the termination of the wardship there should be no subsequent rest day, or bringing of interest into the principal column, again compounding the interest. The balance found in the guardian's hands at the termination of the wardship, interest as well as principal, being all treated as principal, bears interest from that date, but none of the interest accruing after such date bears any

interest, the account being stated after that date "on the ordinary principles of debtor and creditor as to interest * * *" 1 Min. Inst. (3d ed.) 497, and cases cited. In the instant case the decree in question was strictly in accordance with the rule just stated. It requires the guardian to pay interest only on the balance found in his hands at the termination of the wardship, and does not hold him liable for any interest on such interest.

The case of *Cunningham* v. *Cunningham,* 4 Gratt. (45 Va.) 43-46, is relied on for the appellees as containing a contrary holding, but an examination of that case discloses that it is not in conflict, but wholly in accord, with what is said above with regard to the correct rule on the subject. What that case condemned was a revision of the decree there in question which added the interest which had accrued on the balance in the guardian's hands, from the termination of the wardship in February, 1833, to November 1, 1842, to the sum for which the guardian was liable as principal, and required the guardian to pay from the latter date interest on such aggregate, the result of which was to hold him liable for interest on interest which accrued after the termination of the wardship. That result was what was held to constitute the error in the decree.

For the foregoing reasons, we are of opinion that the decrees entered by the court at its January term, 1916, and November term, 1917, were erroneous, in so far as they granted a rehearing of and were in conflict with the provisions of the decree of the November term, 1915, aforesaid. In all other respects the decrees of said January, 1916, and November, 1917, terms of court and the allowance of the $2,800 of loans above mentioned as a credit on the decree against the guardian, entered at the November term, 1915, will be allowed to stand, and the cause will be remanded to the court below for further proceedings to be had therein not in conflict with this opinion.

*Reversed and remanded.*