# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## J. J. COLE v. M. P. FARRIER.

October 12, 1942.

Record No. 2518.

Present, All the Justices.

The opinion states the case.

*Martin & Martin* and *Martin & Wilkinson*, for the appellant.

*W. B. Snidow* and *J. L. Dillow*, for the appellee.

BROWNING, J., delivered the opinion of the court.

This is a chancery suit depending in the Circuit Court of Giles County, Virginia, which arose out of the judicial sale of the lands of the appellant, J. J. Cole, to the appellee, M. P. Farrier, by the court's commissioner.

The case, which is a general creditors' suit, was instituted in January, 1921, by the Graham Grocery Company, a lien creditor of the said Cole, by reason of its judgment against him which was obtained in 1919, seeking to subject his real estate, consisting of lands and timber rights, thereto. The bill averred that there were a great many other judgments and liens against the said Cole and that an account of them would have to be taken and stated.

One Martin Williams, Sr., now deceased, and the appellee both owned some real estate jointly with Cole and were therefore made parties defendant with him. All of the defendants filed answers to the bill and the suit progressed to the point of a decree of reference to F. E. Snidow, Special Commissioner, to take and state an account of the liens against the real estate of the appellant; notice of the taking of this account was accepted by the defendants, including the appellant; the commissioner executed the decree by stating the account, showing the real estate owned by Cole and the liens thereon, in the order of their priority and making his report thereof, which was filed in the clerk's office on June 16, 1921, which was confirmed without any exceptions thereto by a decree of July 2, 1921. The liens were embodied in the decree confirming the report—a rather unusual method of procedure—but a very safe and precautionary one. The decree directed the sale of J. J. Cole's lands by Martin Williams, Jr., commissioner, appointed for the purpose, who, after due advertisement, sold the same to M. P. Farrier, the appellee, for the price of $7,000.00. The sale was confirmed by decree of October, 1921, and the said commissioner was directed to receive the purchase money and disburse it to the creditors according to their respective rights. The commissioner, Martin Williams, Jr., died in December, 1922, and one Walker A. Williams was appointed in his place, with like powers. Both special commissioners gave the bonds required of them.

To the two commissioners at different times, the purchaser, M. P. Farrier, paid the sum of $4,726.30, and to the lien holders, either direct, or to their attorneys or assignees, he paid the sum of $1,112.37, and it appears from the report of a subsequent commissioner, Gregory, that he is still due a balance of $3,642.56 on the purchase price, which, of course, includes accruals of interest.

The exceptions to the rulings of the court, which are the basis of this litigation, grow out of the Gregory report, which came from a recommittal of the account at the instance of the appellant. The case brings under review

two assignments of error. The first is that the court erred in overruling the plea of the statute of limitations interposed by the appellant before commissioner Gregory, for the first time, to all of the judgments and deeds of trust which are alleged by him not to have been brought in before commissioner F. E. Snidow, in the original suit. The second is to the court's ruling in allowing credit to the purchaser for some of the liens which he paid direct to the lien holders, or their attorneys, or assignees, and not through the hands of the special commissioner.

The first alleged error involves the construction and interpretation of Section 5826a, Michie's Code of Virginia 1936, which is as follows:

"When a suit in chancery is commenced as a general creditors suit, or as a general lien creditors suit, or as a suit to enforce a mechanics lien, the running of the statute of limitations shall be suspended as to debts provable in such suit from the commencement of the same, provided they are brought in before the master under the first reference for an account of debts; but as to claims not so brought in the statute shall continue to run, without interruption by reason either of the commencement of the suit or of the decree for an account, until a later decree for an account, under which they do come in, or they are asserted by petition or independent suit or action.

"In suits not instituted originally either as general creditors suits, or as general lien creditors suits, but which become such by subsequent proceedings, the statute of limitations shall be suspended by a decree of reference for an account of debts or of liens only as to those creditors who come in and prove their claims under the decree and as to creditors who come in afterwards by petition or under a decree of recommittal, or a later decree of reference for an account, the statute shall continue to run without interruption by reason of previous decrees until filing of the petition, or until the date of the reference under which they prove their claims as the case may be."

It seems plain that the first paragraph, quoted, of the statute alone has to do with the case in hand. The point which the appellant undertakes to make is that the debts, which were the subject of the liens constituting the account which was taken therein were not, in the language of the statute, "brought in before the master." He bases this point on the assumption that the master, in making up and stating his account, did not have before him the testimony of the debtors or lien holders, themselves, or some one for them as proof of the validity of the debts or liens. We have denominated this an assumption because the report of the master does not show how he arrived at the items constituting his account of the liens. The master, F. E. Snidow, was called by commissioner Gregory as a witness and when he was asked the question as to who was present when the account was taken, replied that he could not say after an interim of twenty years.

The appellant earnestly urges that commissioner Snidow made up his account of liens by simply going to the clerk's office and listing the liens of record there, and, if that alone was what he did, then, the debts were not "brought in" in the sense or meaning of the statute. If this were of more moment, than we think it is, we would emphasize the strange fact that he not only offered no independent proof of it but his counsel, who was present when commissioner Snidow testified, did not ask him what proof he had before him of the validity of the items of the account or if the public records was the only evidence upon which the account was predicated. We are then asked to accept the bare statement of the appellant founded upon what may easily be, and we think is, a misconception of the language of the first paragraph of commissioner Snidow's report, in which it is said: "and that upon investigation of the matters referred in said decree, he finds from the records in the clerk's office of Giles County: I-", then follows a description of the lands and timber interests of J. J. Cole. Next is II, and this: "The liens against J. J. Cole in the order

of their priority are as follows." Then there appears a list of liens represented by deeds of trust and judgments.

It will be noted that the commissioner does not say how he arrived at the liens or their priority. We cannot say, even if it were necessary, that the commissioner did not have proper and legal proof to sustain his report simply because a vitally interested party says that he did not, with no better reason for his contention than that the commissioner could not within one day's time have adopted the method of proof which he urges was the only legal mode, and this in the face of the strong legal presumption of the correctness of the decree which contained the account *in toto.* There is no error alleged as apparent upon the face of the decree and the legal truism should be borne in mind that a decree imports its own verity.

It follows that we think that the statute of limitations was suspended under the terms of the statute and the court was eminently correct in overruling its interposition.

But if this were not so we are confronted by facts in the case which are so significant as to completely refute the contentions of the appellant. He was the principal defendant to a bill filed against him in 1921. He filed an answer, which does not appear in the record and therefore its contents are unknown to us, but evidently it did not present an issue which was not in accord with the prayer of the bill. He accepted service of the notice to take the account. He was legally before the court and present at every step taken. He saw his property sold and entered into a contract of gain with the purchaser to cut and market timber, bark and other forest products. The report of the account of liens and the account itself was confirmed, without objection of any sort. The decree was confirmed. The sale was confirmed and the order of disbursement of the purchase money was had. At none of these junctures did he urge a protest of any sort. He was silent when it was his duty to speak and he will not be heard to speak when it is his duty to be silent.

This court has held that a commissioner's report under similar circumstances as exist here is conclusive. In the case of *Gills* v. *Gills*, 126 Va. 526, 101 S. E. 900, we said, in quoting from the early case of *White* v. *Johnson*, 2 Munf. (16 Va.) 285:

"This court, while it is not disposed to deny that reports, which are erroneous upon the face of them, may be objected to at the hearing or excepted to in the appellate court, although the same were not specially excepted to by the parties prior to the decree made in the cause, is, on the other hand, of the opinion that without such exceptions, reports shall not be impeached on grounds, or in relation to subjects, which may be affected by extraneous testimony; of which nature is the report in this case, so far as relates to interest claimed against the appellant; and that the report, on which the decree of the county court is founded, not being objected to, is conclusive between the parties."

*Idem*, and further: "The parties having been sued and served with process bringing them before the court are presumed to know the subsequent proceedings in the suit which are taken in court."

The decree referred to became final as to Cole and he is bound thereby. It is remarkable that 19 years after the decree he undertakes to register his complaint, and this after Martin Williams, Jr., commissioner and attorney had died, and Walker A. Williams, the succeeding commissioner, had disappeared, and his whereabouts became unknown, Martin Williams, Sr., attorney and assignee, had died and the judge who entered the decree confirming the report and the account of liens had passed away.

To uproot matters of serious import at this late day, which have been accepted and acted upon by persons, either to their advantage or detriment, would be so highly inequitable as to be unjustified by anything to which we have been directed.

The second assignment of error assails the action of the court in allowing the purchaser credit for payments made by him on the liens direct to either the lien holders

or their attorneys, or assignees rather than through the court commissioner. Of course it is elemental that the commissioner who has been directed by decree to collect and disburse the proceeds of the sale, and who has given bond for the faithful discharge of his duties, is the legal and proper medium through which the purchaser must make his payments. The case of *Johnston* v. *Kelley*, 171 Va. 239, 198 S. E. 485, is recent authority for this very salutary rule, although the circumstances in that case were quite different from those here.

A purchaser, of course pays at his peril, if it is to someone other than the one authorized by the court to receive it. But if he pays to one who is entitled to it, one who is the holder or owner of the lien, or his accredited representative or assignee, who can complain, unless it is the commissioner, and, in this case, the payments were with his knowledge and consent.

As was well said by the appellee in his brief, "If the owner of the lien receipts in full for his debt to the purchaser then that purchaser would be entitled to have credit with the commissioner for the payment of that lien. The law, certainly equity, does not require vain things to be done, if Farrier is not entitled to credit for what he has paid what is going to become of that money which he has paid?" The case of *Davidson* v. *Pope*, 82 Va. 747, 1 S. E. 117, dealt with facts very like those here. The lower court, at the suit of an administrator of a deceased lunatic, required the committee of the lunatic, who had paid the two surviving sisters and only heirs at law of the lunatic much of the money they were entitled to as such heirs, to pay the said money over again to the administrator. This court said:

"This was most inequitable, and not justified by the circumstance that the said parties were not before the court. There were no debts due to any creditor of the estate of the lunatic, and the whole duty of the administrator was to collect the assets of the estate and to pay it over to the two parties entitled to it, and upon no equitable principle could the administrator collect for these parties more than was

justly due them; and, as no decree ought to have been had in the cause settling a distributee account without the distributees being before the court, upon the case made by the answer, and the proofs and the commissioner's Report, the court should have caused the plaintiff to amend his bill, and bring in the distributees, and settle fairly with the committee, allowing him credit for his payments to the parties entitled; and the said decree will for that cause be reversed, and the cause remanded for further proceedings to be had therein, with all the parties entitled to the estate before the court, when the payments made by the committee may be allowed to him and exact justice done between the parties. It is erroneous to require this committee to pay the sum of $1,893.45 to the administrator, for the benefit of Eliza H. Pope, when Eliza H. Pope has already been paid; and if, as intimated by the administrator in this court, these credits would have been allowed him, although he excepted to the commissioner's report because they were allowed, still it was a vain thing to allow the committee to pay $1,893.45 to the administrator that the administrator might immediately repay it to him."

See also case of *Small* v. *Lumpkin*, 28 Gratt. (69 Va.) 832.

In Am. & Eng. Ency. of Law (2nd ed.) vol. 17, page 984, under the title of Judicial Sales is this statement of the law:

"The purchaser must at his peril see that the person to whom he pays the purchase money is authorized to receive the same, for he is not relieved from liability by a payment to a person not authorized to receive it, such as a commissioner of sale or a receiver who has not given the bond required by law in order to authorize him to receive payment, or whose bond has not been approved, unless there are some exceptional circumstances making it just that the purchaser should be protected."

And in 35 C. J. at page 54, is this statement of the law:

"A payment by the purchaser does not discharge him from his liability, unless the court has by its order directed the collection and receipt of the funds, but if payment is made to one whom the court might have ordered it to be

paid, such payment may be afterwards recognized and sanctioned."

It is worthy of remark that it is shown by the record that no other person, lien holder or otherwise, has ever complained of what has been done, or has not been done, in this suit. The accuracy of the report and of the account has never been questioned, nor has there ever been a suggestion of the existence of a lien that was not reported, and correctly so.

Cole stood by, as mute as the grave, while all of the steps now complained of were taken, and charged with notice of them all, for nearly twenty years, after the lapse of which he urges that it was all wrong; that the provisions of the statute were not complied with; that the debts were not brought in court; that the pendency of the suit and the proceedings therein did not suspend the statute of limitations; that he is entitled to plead it to the injury and disaster of everyone except himself and that Farrier should be penalized to the extent of being required to pay to him what he has already paid to those to whom the money would ultimately go by right and in justice.

The decree of the trial court is plainly right. If upon further hearing it should be found that all liens, prior in dignity to those Farrier has paid, have been discharged, then Farrier is entitled to credit for those payments, in whole or in part, which he has made to those of inferior dignity and which were not allowed by the trial court.

We remand the case for further procedure as suggested by the trial court in its opinion, to be made in accordance with this opinion. The decree is affirmed with such possible modifications as may be required by the subsequent developments referred to herein.

*Affirmed and remanded.*